UNITED STATES ex rel. Robert
BURNETTE, Plaintiff,

v.

Vetal VALANDRA and Harold Schunk,
Defendants.

UNITED STATES ex rel. Robert
BURNETTE, Plaintiff,

v.

Vetal VALANDRA, Cato Valandra and
Harold Schunk, Defendants.

UNITED STATES ex rel. Robert
BURNETTE, Plaintiff,

v.

Vetal VALANDRA, Defendant
(two cases).

Nos. Civ. 66–74W to 66–77W.

United States District Court
D. South Dakota, W. D.

June 12, 1969.

Blaine Simons, Sioux Falls, S. D., and John E. Goodrich, Pierre, S. D., for plaintiff.

Ramon A. Roubideaux, Fort Pierre, S. D., for defendants Vetal Valandra and Cato Valandra.

David V. Vrooman, Asst. U. S. Atty., Sioux Falls, S. D., for defendant Harold Schunk.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

These cases were brought in the name of the United States on the relation of Robert Burnette against the named defendants, all conceded to be United States Government employees, alleging that the defendants had engaged in trading with Indians in violation of Section 68 of Title 25 of the United States Code Annotated (hereinafter referred to as U.S. C.A.), which provides as follows:

*Employees not to trade with Indians*

No person employed in Indian affairs shall have any interest or concern in any trade with the Indians, ex-

cept for, and on account of, the United States; and any person offending herein, shall be liable to a penalty of $5,000, and shall be removed from his office.

This statute was enacted June 30, 1834. Its harshness has been reduced by later enactments. Section 68a of Title 25, U.S.C.A., duplicated in Section 87a of the same Title, and passed by Congress June 19, 1939, prohibits trading with Indians by United States Government employees as follows:

\* \* \* *purchases from Indians by employees*

Anything contained in sections 68 and 87 of this title to the contrary notwithstanding, employees of the United States Government, including those in the Indian Service, may, under such rules and regulations as the Secretary of the Interior shall prescribe, be permitted to purchase from any Indian or Indian organization any arts and crafts or any other product, service, or commodity, produced, rendered, owned, controlled, or furnished by any Indian or Indian organization: *Provided, however*, That no employee of the United States Government shall be permitted to make any such purchases for the purpose of engaging directly or indirectly in the commercial selling, reselling, trading, or bartering of said purchases by the said employee. June 19, 1939, c. 210, 53 Stat. 840.

The scope of permissible actions involving trade between Indians and United States Government employees has also been altered by Sections 251.5 and 251.6 of Title 25 of the Code of Federal Regulations (hereinafter referred to as CFR). These Sections provide in part:

Section 251.5 *Government employees not to trade with Indians except in certain cases.*

Save as authorized by the act of June 19, 1939 (53 Stat. 840; 25 U.S.C. 68a, 87a, 441), no person employed in Indian affairs shall have any interest or concern in any trade with the Indians except for and on account of the United States; and any person offending herein shall be liable to a penalty of $5,000 and shall be removed from his office. Pending the promulgation of regulations prescribing in more detail the transactions authorized by the act of June 19, 1939, employees of the United States Government, including those in the Bureau of Indian Affairs, may be permitted to trade with Indians or Indian organizations under the conditions specified below:

(a) Employees of the United States Government, including those in the Bureau of Indian Affairs may, with the approval of the Secretary of the Interior in each case where the amount exceeds $100, or with the approval of the superintendent or other officer in charge, where the amount involved does not exceed $100, be permitted to purchase from any Indian or Indian organization any arts and crafts or any other product, service or commodity produced, rendered, owned, controlled or furnished by any Indian or Indian organization: *Provided*, That no employee of the United States Government shall be permitted to make any such purchases for the purpose of engaging directly or indirectly in the commercial selling, reselling, trading, or bartering of said purchases by the said employee: *And provided further*, That employees in Alaska may in each case make such purchases with the approval of the Secretary of the Interior where the amount involved exceeds $250, and with the approval of the superintendent or other officer in charge where the amount involved does not exceed $250.

(b) *United States employees, Indian blood.* Indian employees of the United States Government, of whatever degree of Indian blood, may be members in the same manner as other Indian members of the tribe not so employed and receive benefits by reason of their membership in such tribes in corporation or cooperative associations, organized by and operated for Indians. Such Indian government em-

ployees may engage in all lawful transactions with Indians, Indian tribes and such corporations or cooperative associations. None of the transactions authorized herein may be entered into by such employees for the purpose of engaging directly or indirectly in the selling, releasing, trading, bartering or passing on in any other way for profit the objects, rights, services or property thus acquired. Nothing in this section shall prevent in proper cases the disposition of any such property when such transaction cannot be considered as actually engaging in any of the businesses prohibited in this section. All transactions authorized herein to be valid must be approved by the Secretary of the Interior. * * *

Section 251.6 *Small purchases.*

The purchase in small quantities for home use or consumption by Government employees or others, of blankets, baskets, etc., and articles of subsistence offered for sale by Indians, is held not to constitute trading with Indians within the meaning of section 2078 of the Revised Statutes. (R.S. 2078; 25 U.S.C. 68)

The four cases have been consolidated for the purposes of trial to and written decision by the Court.

In reaching the decisions in these cases, the Court found it necessary to define the terms "trade" and "commercial." The interpretation of the term "trade" as used in the statute herein involved was carefully considered in United States v. Douglas, 190 F. 482, 484, 36 L.R.A.,N.S., 1075 (8th Cir. 1911). The Court stated in part:

There is little if any conflict as to the usual and ordinary meaning of the word "trade." It is defined in Webster's International Dictionary as: "The act or business of exchanging commodities by barter or by buying and selling for money; commerce; traffic; barter."

The Century Dictionary defines it as: "The exchange of commodities for other commodities or for money. The business of buying or selling, dealing by way of exchange, commerce, traffic. Trade comprehends every species of exchange or dealing either in the produce of land, in manufactures, or in bills or money."

In the New American Encyclopaedic Dictionary it is defined as: "The act, occupation or business of exchanging commodities for other commodities or for money. The business of buying and selling; dealing by way of sale or exchange; commerce; traffic."

In Bouvier's Law Dictionary it is said: "In its most extensive signification the word includes all sorts of dealings by way of sale or exchange."

In Rapalje and Lawrence's Law Dictionary it is defined as: "Traffic; commerce; exchange of goods for other goods or for money."

In 28 American and English Encyclopaedia of Law, 338, it is said: "In ordinary language the word 'trade' is employed in three different senses: First, in that of the business of buying and selling; second, in that of an occupation generally; and, third, in that of a mechanical employment in contradistinction to agriculture and the liberal arts." * * *

In 15A C.J.S. 1, the word "commercial" is defined as follows:

The word "commercial" is defined as meaning mercantile; occupied with commerce; relating to or dealing with commerce; of the nature of commerce; of or pertaining to commerce; pertaining or relating to commerce or trade; derived by commerce or trade; engaged in trade; having financial profit as the primary aim.

The term "commercial", in its broad sense comprehends all business and industrial enterprises, and in a comprehensive sense it includes occupations and recognized forms of business enterprise which do not necessarily involve trading in merchandise as well as buying, selling, and exchange in the general sales or traffic of markets, although, when limited to

the purchase and sale or exchange of goods and commodities, it is said to be used in a narrow and restricted sense. Thus it has been said that in its narrow sense it includes only those enterprises which are engaged in the buying and selling of goods.

### CIV66–74W

The basis for the complaint is as follows:

#### IV.

That on or about the 5th day of April, 1963, at Rosebud, South Dakota, the defendant Vetal Valandra induced one Irene Stoneman Blue Horse, at a time when she was under the influence of intoxicating liquor, to transfer to him all of her interest in the following described real estate:

NORTHWEST QUARTER (NW¼) OF SECTION TWENTY-SIX (26) AND THE SOUTHWEST QUARTER (SW¼) OF SECTION TWENTY-THREE (23), TOWNSHIP 39N, RANGE 29W OF THE SIXTH PRINCIPAL MERIDIAN ON THE ROSEBUD INDIAN RESERVATION,

which land was then and is now held in trust by the United States of America.

#### V.

That at Rosebud, South Dakota, the above transfer was immediately approved by the defendant Harold Schunk, as Superintendent of the Rosebud Indian Reservation at Rosebud, South Dakota, by executing in writing his approval thereof; that the said defendant Harold Schunk well knew at the time he approved said transfer that said Vetal Valandra was an employee in Indian affairs and was prohibited by law from trading with Indians; and well knew at said time that Irene Julia Stoneman Blue Horse was an Indian and a registered member of the tribe of Sioux Indians located on the Rosebud Indian Reservation in South Dakota, and that she was a ward of the United States. That the said transfer was not approved by the Secretary of the Interior, was null and void, and declared to be so by proper authority.

#### VI.

That the said Harold Schunk, well knowing that the said Vetal Valandra was employed in Indian affairs, that the said described land so transferred was trust land, and that the said Irene Julia Stoneman Blue Horse was a ward of the United States, conspired unlawfully with the said Vetal Valandra to procure the land above described from the said Irene Julia Stoneman Blue Horse for the use and benefit of the said Vetal Valandra.

The Court, upon concession by plaintiff's attorneys that they did not have sufficient proof to sustain this action against defendant Harold Schunk, entered an order of dismissal with prejudice as to defendant Schunk.

The main cause for complaint is that a transaction that had to be approved by the Department of Interior did not gain that approval. The Department of Interior did not give the transaction approval because of misrepresentations that had been made—those being that Vetal Valandra was the nephew of the TLE certificates owner, Mrs. Irene Julia Stoneman Blue Horse, now Mrs. Eagle Bear, and that said certificates were a gift when in actuality said transfer was the result of a sale. The Department of Interior made no finding of fact as to the perpetrator of the misrepresentation. It is the finding of this Court, after hearing all the evidence, that said misrepresentation was not made at the instigation of defendant Vetal Valandra, and that simply because the Department of Interior failed to approve a transaction which it had the power to approve would not prove that any involved party had violated Federal law.

Defendant Valandra made application for approval for said transaction, it was turned down, and the land and the TLE certificates restored to their own-

er. The act of defendant Vetal Valandra in making application for approval of said transaction is not a violation of Section 68 of Title 25 U.S.C.A.

#### CIV66–75W

The basis for the complaint is as follows:

#### II.

That on or about July 7, 1966, the defendant Vetal Valandra procured a haying permit of the tribal land known as Rosebud Boarding School lands, which lands constitute a part of Rosebud Indian Reservation in South Dakota, containing in excess of 1005 acres.

#### IV.

Plaintiff states, upon information and belief, that the said land was advertised for public bids and that all bids were rejected by the defendant Cato Valandra, President of the Tribal Council of the Rosebud Sioux Tribe of Indians, and that the said Cato Valandra is a first cousin of the said Vetal Valandra. That the said Defendants Vetal Valandra, Cato Valandra and Harold Schunk negotiated the said permit at a price far below a fair price; that the land was leased for the amount of one dollar per acre, and the value of the hay removed from the premises during the 1966 season amounted to about $15,000.00.

#### VI.

That, upon information and belief, plaintiff states that the said Cato Valandra, Vetal Valandra and Harold Schunk conspired together, contrary to law, to give a haying permit of said property in the name of the said Vetal Valandra.

The Court, upon concession by plaintiff's attorneys that they did not have sufficient proof to sustain this action against defendants Cato Valandra and Harold Schunk, entered an order of dismissal with prejudice as to those defendants.

The evidence introduced to substantiate this claim did not indicate that the Tribal Council must advertise such hay land for bids, nor do the Constitution, By-Laws and Corporate Charter of the Rosebud Sioux Tribe so provide. No evidence was introduced that the price paid, one dollar per acre, was not the fair market price at the time of this incident.

The testimony of Adam Bordeaux, the Tribal Leasing Committee officer at whose request defendant Vetal Valandra entered into said agreement to cut the hay in question, would indicate that Vetal Valandra cut this hay at the request of and as a favor to the Tribe. Bordeaux's testimony also indicated that no other individual had been found to cut this hay. This would, in effect, amount to accepting employment from the Tribe at its request. It should also be pointed out that the arrangement was approved by the leasing committee for the Tribal Land Enterprises of the Rosebud Sioux Tribe as well as by Harold Schunk, Superintendent of the Rosebud Indian Agency.

These facts would not indicate that defendant Vetal Valandra was engaging in trade with Indians contrary to Section 68 or 68a of Title 25 U.S.C.A.

#### CIV66–76W

The basis for the complaint is as follows:

#### III.

That on or about the 20th day of September, 1964, the said defendant Vetal Valandra purchased a barn from Charles Little Eagle, an Indian and an enrolled member of the Rosebud Sioux Tribe of Indians, for the sum of $125.-00 and resold said barn to Alex Whipple, Jr., for the sum of $225.00, in violation of Section 68 of Title 25 of the United States Code Annotated.

The evidence introduced to substantiate this charge included a check from defendant Vetal Valandra to Charles Little Eagle in the sum of $150.00, dated October 17, 1963. The complaint was

thereafter amended to conform to this evidence. Also put into evidence was a check from Alex Whipple, Jr., in the sum of $225.00, dated October 18, 1963. Testimony from both Whipple and defendant Valandra indicated that the additional $75.00 paid to Valandra by Whipple was payment for hay previously received from Valandra. Valandra testified that he only purchased the barn as a go-between, acting on behalf of Whipple, and that he was reimbursed the amount of the $150.00 purchase price by Whipple. Whipple's corroborative testimony also indicates that Valandra was acting on Whipple's behalf and that only $150.00 was paid for the barn to Valandra. The one day time sequence between the involved checks would also verify defendant's testimony.

The facts above, as found by the Court, would not indicate that Valandra was engaging in trade with Indians contrary to Section 68 or 68a of Title 25 U.S.C.A., but would rather indicate that Valandra was assisting a neighbor purchase a desired building. There is no evidence to indicate that Valandra purchased the barn for any other reason than to assist Whipple and that he, by so doing, was engaging in a commercial venture contrary to Federal law.

### CIV66–77W

The basis for the complaint is as follows:

### III.

That on or about the 18th day of December, 1965, the said defendant purchased three heifer calves from Arthur Jackson, a registered member of the Rosebud Sioux Tribe of Indians, for Seventy Dollars ($70.00) per head, and resold them at the Valentine, Nebraska, Sales Ring, in violation of Section 68 of Title 25 United States Code Annotated.

The complaint was amended to read December 5, 1965.

The evidence introduced in support of the complaint included two checks written by defendant Vetal Valandra. One check was to Arthur Jackson in the sum of $70.00 with the notation of "one steer black" accompanied by a brand symbol. The other check was written in favor of one Abram Ovitt, a non-Indian, in the sum of $140.00 with the notation of "two black calves", which notation was also accompanied by brand symbols. Both checks were dated December 4, 1965.

The only evidence as to the disposition of the steer calf purchased from Jackson was the uncontroverted testimony of defendant Valandra that he was not certain what he had done with it, but likely he had butchered the animal because it was a runt. The defendant further testified that he had purchased the calves sight-unseen from Jackson and Ovitt, Jackson's non-Indian son-in-law, at their request. Jackson had injured himself and wanted the money to enter the hospital at Rapid City, South Dakota.

The evidence introduced would indicate that defendant Valandra did not trade with Indians in violation of Section 68 of 25 U.S.C.A., but rather engaged in a transaction clearly allowable under an exception provided for in 25 CFR 251.5(a) and (b) making a purchase of a "product, service or commodity produced, rendered, owned, controlled or furnished by any Indian or Indian organization" where the amount did not exceed $100.00. No testimony was introduced to indicate that the price paid was not adequate consideration in this instance, nor was that issue even raised.

The foregoing shall constitute the findings of fact and conclusions of law as to all four cases.