**David B. MOFFER, Petitioner,**

v.

**James G. WATT, Secretary, U. S. Department of the Interior, Respondent.**

**No. 81–2197.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 16, 1982.

Decided Oct. 15, 1982.

As Amended Oct. 15, 1982.

Jack B. Gordon, Washington, D. C., for petitioner.

---

Regina C. McGranery, Asst. U. S. Atty., with whom Stanley S. Harris, U. S. Atty., and Royce C. Lamberth, R. Craig Lawrence, and Michael J. Ryan, Asst. U. S. Attys., Washington, D. C., were on the brief, for respondent.

Before WRIGHT, WALD and MIKVA, Circuit Judges.

Opinion for the court PER CURIAM.

PER CURIAM:

We are asked in this case to review a decision by the Merit Systems Protection Board (MSPB) upholding the dismissal of petitioner, David B. Moffer, from his position with the Bureau of Indian Affairs, Department of the Interior. Because we conclude that the MSPB correctly found petitioner's conduct to violate the statutory prohibition against federal employees trading with Indians and properly held that his discharge was an appropriate penalty, we affirm the MSPB decision.

## I. BACKGROUND

Petitioner Moffer was a realty specialist at the Anadarko [Oklahoma] Indian Agency (Agency), responsible for overseeing the acquisitions and dispositions of all Indian trust properties in the area. In 1978 Moffer, his wife Wildena, and his wife's cousin, Edwin Edge—all three full-blooded Indians—became parties to a land transaction. In need of money, Edge decided to sell about 160 acres of property; to keep the land in the family, he sold the property to Wildena for $40,000. Moffer cosigned his wife's financing agreement with a loan company, and the deed to the land was prepared in both his name and his wife's name.[1]

On February 7, 1980, the Agency removed Moffer from his position, charging him with violations of 25 U.S.C. § 68 (1976) (prohibiting federal employees from trading with Indians), 43 C.F.R. § 20.735–15(a)(2) (1981) (prohibiting use of information gained through government employment for financial transactions), and 43 C.F.R. § 20.735–32(d)(1) (1981) (prohibiting actions which result in, or create the appearance of, using public office for private gain). Moffer appealed his removal to the MSPB. Following a hearing, the presiding officer found that petitioner's involvement in the land purchase had violated only the Section 68 prohibition and did not warrant dismissal. See Moffer v. Bureau of Indian Affairs, Docket No. DA 075209208 (M.S.P.B. July 10, 1980) (hereinafter cited as Initial Decision), Joint Appendix (JA) at 14–15. However, on petition for review, the MSPB reversed the initial decision and held: (1) that Moffer's conduct constituted a serious violation of both Section 68's prohibition and the regulation against creating the appearance of using public office for private gain; and (2) that the Agency's decision to impose the penalty of removal was fully justified. See Moffer v. Department of the Interior, Docket No. DA 075209208 (M.S.P.B. October 14, 1981) (hereinafter cited as Final Board Decision), JA at 20–23. This final decision is now before us on review.

## II. VIOLATION OF 25 U.S.C. § 68

Petitioner contends that the MSPB finding of a violation of Section 68 was wrong as a matter of law and was unsupported by substantial evidence.[2] We disagree.[3] The

---

1. When questions were raised about petitioner's interest in the property, he executed a quitclaim deed in favor of his wife.

2. The appropriate standards for reviewing MSPB decisions are provided by the Civil Service Reform Act of 1978:

    [T]he court shall review the record and hold unlawful and set aside any agency action, findings, or conclusions found to be—
    (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

    (2) obtained without procedures required by law, rule, or regulation having been followed; or
    (3) unsupported by substantial evidence[.]

    5 U.S.C. § 7703(c) (Supp. IV 1980).

3. Because petitioner's clear violation of the statute is sufficient to warrant his dismissal, we deem it unnecessary to reach the issue of his violation of applicable Department of Interior regulations.

language of the statute is clear and unmistakable:

> No person employed in Indian affairs shall have *any interest or concern in any trade with the Indians,* except for, and on account of, the United States; and any person offending herein, shall be liable to a penalty of $5,000, and shall be removed from his office.

25 U.S.C. § 68 (1976) (emphasis added).[4] Moffer's cosignature on the loan agreement financing the land purchase and the presence of his name (albeit temporarily) on the land deed plainly constitute "interest" or "trade" within the broad meaning of those statutory terms. *See Ewert v. Bluejacket,* 259 U.S. 129, 137, 42 S.Ct. 442, 444, 66 L.Ed. 858 (1922) (federal employee's single purchase of land from an Indian falls within Congress' intended meaning of phrase "trade with the Indians"); *United States v. Douglas,* 190 F. 482, 484–485 (8th Cir. 1911). Petitioner contends, however, that he had no intent to acquire an interest in the land, that his wife simply needed his signature on the loan to obtain financing, and that she placed his name on the deed without his knowledge. Brief for petitioner at 6–7. This argument misconstrues Section 68's prohibition; the statute on its face has no intent requirement.[5]

Petitioner also argues that his "unintentional" acquisition of interest in the land simply falls outside the intended scope of the statute. It is true that the statute, dating back in some form to 1796,[6] was originally intended to protect the "inexperienced, dependent, and improvident * * * wards of the nation" from the "avarice and cunning of unscrupulous men in official position." *Ewert v. Bluejacket, supra,* 259 U.S. at 136, 42 S.Ct. at 443. Such a paternalistic attitude toward Indians may appear anachronistic, and even condescending, today.[7] Edwin Edge himself, for example, hardly fits the *Ewert* Court's stereotyped view—he holds a B.A. in business administration and, according to the presiding official at the hearing, decided to sell his land "knowingly, intelligently, and with due deliberation." *Initial Decision,* slip op. at 10, JA at 15. But the scope of Section 68 is not restricted to instances of outright unscrupulousness and readily exploitable Indians; the statute is intended to guard even honest employees from the temptation of taking advantage of their Indian constituency. *See Ewert, supra,* 259 U.S. at 136, 42 S.Ct. at 443.

It is therefore not surprising that Congress saw fit to renew the prohibition

---

**4.** Section 68 was repealed in 1980 by Pub.L. 96–277, 94 Stat. 544. The offense with which petitioner was charged is now covered by 18 U.S.C. § 437 (Supp. IV 1980), which maintains the same ban against trading with Indians, but narrows the category of federal employees against whom it applies to those directly employed by the Bureau of Indian Affairs and the Indian Health Service. *See* S.Rep.No.96–629, 96th Cong., 2d Sess. 5 (1980). The statute further allows the President to permit such trade, subject to certain exceptions, under regulations promulgated by him or his designee. 18 U.S.C. § 437(b)(1) and (2); *see* S.Rep.No.96–629, *supra.* As petitioner was an employee with the Bureau of Indian Affairs, the restriction of the category of relevant federal employees has no impact on his case.

**5.** As support for his argument, petitioner refers this court to a decision rendered by the District Court for the Western District of South Dakota, finding no violation of § 68 by a federal employee who—acting as a "go-between" for his neighbor—purchased a barn from an Indian and resold it the next day to his neighbor. *Burnette v. Valandra,* 300 F.Supp. 312, 317 (W.D.S.D.1969). Unfortunately, the case provides little analysis of either the statute or the challenged conduct, and appears to misconstrue the statute as requiring proof of a commercial venture to establish a violation. *Id.*

**6.** *See United States v. Douglas,* 190 F. 482, 485–490 (8th Cir. 1911) (discussion of earlier statutory and treaty prohibitions on trading with Indians).

**7.** The Senate committee considering re-enactment of the trading ban emphasized that Indians "have now become better educated and more sophisticated in business practices and are better able to engage in arms-length transactions with non-indians * * *. Indians are now more aware of their legal rights and the avenues for enforcement of these rights." S.Rep.No.96–629, *supra* note 4, at 4.

against Bureau of Indian Affairs employees trading with Indians.[8] Its primary concern was with those federal employees directly in positions to use their official powers over Indian trust properties or funds in a coercive or otherwise inappropriate manner.[9] By re-enacting a statute of an admittedly strict and prophylactic character, Congress sought to ensure integrity of conduct by these federal employees. As the Board stressed, Moffer was responsible for overseeing the disposition of all Indian trust properties in the area, and so stood in a direct fiduciary relationship with those whose interests he was employed to protect. *See Final Board Decision,* slip op. at 6, JA at 23. These responsibilities [10] place his undisputed involvement in a land sale squarely within the category of conduct Congress intended to prohibit. In short, petitioner's claims that the MSPB read the statute too broadly and that no evidence exists to support the finding of a violation must fail.

### III. APPROPRIATENESS OF PENALTY

■■ Having sustained the finding that Moffer violated Section 68's prohibition against trading with Indians, this court's further role in assessing the appropriateness of the decision to dismiss is quite limited. Unless the penalty is "so clearly exces-

sive as to constitute an abuse of the agency's discretion," *Gipson v. Veterans Administration,* 682 F.2d 1004, 1011 (D.C.Cir.1982), the Agency's judgment must be upheld. *See also Jolly v. Listerman,* 672 F.2d 935, 943 (D.C.Cir.1982). The decision of the MSPB to uphold Moffer's removal survives this limited inquiry. Moffer violated a clear statutory ban on trade encompassing the purchase of property from an Indian. The Agency had a legitimate interest in seeking to preserve its credibility and reputation for impartiality by removing an official whose conduct was directly contrary to the public trust he was charged with protecting. *See Yacovone v. Bolger,* 645 F.2d 1028, 1032 (D.C.Cir.) (removal of postmaster warranted when he committed "serious breach of conduct" that had "significant effect on his reputation for honesty and integrity"), *cert. denied,* 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981).[11] The MSPB could therefore reasonably conclude that petitioner's dismissal would "promote the efficiency of the service."[12] *See* 5 U.S.C. § 7513(a) (Supp. IV 1980); *Doe v. Hampton,* 566 F.2d 265, 272 (D.C.Cir.1977). Finally, the MSPB did indicate that it had considered all the relevant circumstances of this case—including the seriousness of the offense, the penalty specified in Section 68

8. The new statute does provide at 18 U.S.C. § 437(b)(2)(B) (Supp. IV 1980) that the Secretary of the Interior (or his designee) may permit an otherwise prohibited purchase of land if the employee first seeks approval. Petitioner's argument that his failure to obtain permission is therefore a mere technical violation ignores the important safeguard and oversight policies served by this requirement.

9. *See* H.R.Rep.No.96–653, 96th Cong., 2d Sess. 3 (1979). The concern would appear to be justified. One piece of testimony received by the Senate Select Committee on Indian Affairs indicated that at one reservation over 22% of the Indian lands purchased between 1964 and 1978 was bought by employees of the Bureau of Indian Affairs or their relatives. *See* S.Rep. 96–629, *supra* note 4, at 6–7.

10. Indeed, one of petitioner's responsibilities was to serve on the committee that must approve applications for the "patents-in-fee" needed to sell trust property. This committee

approved the patent-in-fee for the very property in which Moffer acquired an interest. *See Initial Decision,* slip op. at 6, JA at 11.

11. *Cf. Wroblaski v. Hampton,* 528 F.2d 852, 856 (7th Cir. 1976) (dismissal of employees of Immigration and Naturalization Service fully justified in light of appearance of conflict of interest arising from the use of aliens in personal household service).

12. The case law interprets this language to require that a "nexus" be shown to exist between the action taken by an agency and the good of the service. *See, e.g., McClelland v. Andrus,* 606 F.2d 1278, 1291 (D.C.Cir.1979). While the MSPB might have provided a clearer articulation of the nexus, its existence can be inferred from the circumstances of the dismissal itself. *See, e.g., Gueory v. Hampton,* 510 F.2d 1222, 1227 (D.C.Cir.1974). In this case, the intimate connection between the petitioner's misconduct and his public responsibilities speaks for itself.

itself,[13] and any mitigating factors[14]—before concluding that the removal penalty had been properly imposed by the Agency. *See Final Board Decision,* slip op. at 7–8, JA at 24–25. As we cannot find that petitioner's removal was so clearly unwarranted as to constitute an abuse of discretion, we defer to the judgment of the Agency, as approved by the MSPB, that Moffer should be removed from his position based upon his violation of 25 U.S.C. § 68 (1976).[15]

## IV. CONCLUSION

For the reasons stated above, we deny petitioner's request for review and affirm the decision of the Merit Systems Protection Board.

*So ordered.*

**13.** Contrary to petitioner's assertions, we do not believe that the MSPB felt compelled to impose the penalty of removal by the terms of the statute. The plain language of its decision makes it clear that the MSPB weighed *all* the relevant evidence before deciding to approve the removal penalty. *See Final Board Decision,* slip op. at 7–8, JA at 24–25.

**14.** The MSPB explicitly cited to its decision in *Douglas v. Veterans Administration,* MSPB Order No. AT075299006 at 32–33 (April 10, 1981), which enumerated possible mitigating factors to be considered. This reference constitutes sufficient indication that the MSPB took into account potentially mitigating considerations in accordance with that decision.

**15.** We also decline to remand this case back to the Agency for a determination of whether the asserted grounds for dismissal were to be independent or cumulative. *See Meehan v. Macy,* 392 F.2d 822, 839 (D.C.Cir.), *aff'd en banc,* 425 F.2d 472 (D.C.Cir.1968). We believe that the violation of § 68 alone fully warrants dismissal, and note that Congress obviously shared our view of the seriousness of the offense by explicitly providing in the newly revised statute that violators "shall be removed from office *notwithstanding any other provision of law concerning termination of federal employment.*" 18 U.S.C. § 437(a) (Supp. IV 1980) (emphasis added).