**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2016 MSPB 7**

Docket No. DA-0752-15-0054-I-1

**Patrick W. Ryan,**

**Appellant,**

**v.**

**Department of Homeland Security,**

**Agency.**

February 4, 2016

Christopher D. Vaughn, Esquire, Decatur, Georgia, for the appellant.

Gregory Scott Dowling, Esquire, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1     The appellant has filed a petition for review of the initial decision, which affirmed the agency's action suspending him for 30 days. For the reasons discussed below, we GRANT the appellant's petition for review and REVERSE the initial decision.

BACKGROUND

¶2     The appellant is a Program Analyst with the agency's Federal Emergency Management Agency (FEMA) in the Texas National Processing Service Center. Initial Appeal File (IAF), Tab 4 at 31-32. The appellant works in the Contract Oversight Management Section, and his duties previously included being a

Contracting Officer Representative. *Id.* at 89, 196-210. The appellant was assigned to conduct market research on call centers in the Dallas/Fort Worth area beginning in May 2013. IAF, Tab 5 at 35. The appellant also was assigned to conduct market research on bilingual call centers nationwide from July to September 2013. *Id.* at 42.

¶3 On September 4, 2013, the appellant sent an email to his supervisor stating that his wife's company was working on a joint venture with a call center that would compete for a contract. *Id.* at 45. The appellant also sent an email to one of the agency's ethics counselors on September 4, 2013, stating that he was the president of his wife's company, Texas Based Acquisitions (TBA), and wanted to know if a conflict of interest existed that would preclude TBA from competing for the agency's call center contract and, if so, how long of a period would need to pass before TBA could compete. *Id.* at 144. The appellant also asked whether any conflict of interest existed if TBA did business with agencies within the Department of Homeland Security other than FEMA. *Id.*

¶4 After these inquiries, the agency recused the appellant from his duties related to the agency's call center project and investigated his outside activities, including obtaining a sworn statement from the appellant. *Id.* at 19-29, 95, 146-48. In his sworn statement, the appellant stated that TBA had not pursued any involvement with a contact center but that there had been internal discussions about joint venturing with a bilingual contact center in the future once the appellant retired from FEMA and the appropriate amount of time had passed to avoid a potential conflict of interest. *Id.* at 146-47.

¶5 The agency proposed to remove the appellant based on five charges: (1) "Ethics Violations, including Apparent Conflict of Interest"; (2) failure to report an offense, status, or relationship; (3) lack of candor; (4) misrepresentation; and (5) sleeping on duty. IAF, Tab 5 at 4-12. The deciding official sustained only the first two charges and suspended the appellant for 30 days. IAF, Tab 4 at 32-35. The appellant appealed his suspension,

arguing that the agency had insufficient evidence to support the sustained charges. IAF, Tab 1. The appellant requested a decision without a hearing. IAF, Tab 9.

¶6    The appellant argued that charge 1 contained five independent charges, each of which the agency had to prove to sustain the charge. IAF, Tab 14 at 8-13. The appellant also argued that the agency could not prove the charges because TBA did not begin internal discussions regarding the possibility of bidding for call center contracts until after the appellant completed his market research assignments and notified the agency about the potential conflict of interest. *Id.* at 2-5, 13-16. The administrative judge issued an initial decision, finding that the agency had proven charges 1 and 2, and affirming the 30-day suspension. IAF, Tab 17, Initial Decision (ID).

¶7    The appellant has filed a petition for review, which consists mainly of the arguments he made below. *Compare* Petition for Review (PFR) File, Tab 1 at 10-19, *with* IAF, Tab 14 at 8-16. The agency has filed an opposition to the appellant's petition for review. PFR File, Tab 4.

## ANALYSIS

### The agency provided the appellant with adequate notice of the misconduct charged.

¶8    The appellant argues that charge 1 is ambiguous and unspecific. PFR File, Tab 1 at 10-11. Due process mandates that notice of charges be sufficiently detailed to provide a meaningful opportunity to reply. *Rawls v. U.S. Postal Service*, 94 M.S.P.R. 614, ¶¶ 19-21 (2003), *aff'd*, 129 F. App'x 628 (Fed. Cir. 2005). We find that the appellant was provided adequate notice of the misconduct charged to provide a meaningful response.

¶9    The agency charged the appellant with "Ethics Violations, including Apparent Conflict of Interest." IAF, Tab 5 at 4. The notice of proposed removal further described his alleged misconduct in narrative form, and stated that the specified action "constituted ethics violations, including reasonably creating the

appearance of a conflict of interest, loss of impartiality, use of public office for private gain, and improper use of nonpublic information."[1]  *Id.* at 4-5.  We find that the notice of proposed removal was sufficiently detailed to allow for a meaningful response because it specified both the appellant's relevant conduct and types of ethical violations.  Moreover, the appellant filed a thorough reply to the proposed removal.  IAF, Tab 4 at 41-46; *see Yinat v. Department of the Army*, 101 M.S.P.R. 328, ¶ 15 (2005) (stating that, where an appellant comes forward and refutes a charge made against him, the Board cannot find that he was not given notice of the charge).  Thus, we find that the proposal was sufficiently specific and detailed.

¶10      The administrative judge sustained charge 1 based on her finding that the appellant's actions "created an appearance of a conflict of interest and a loss of impartiality."  ID at 12-14.  The appellant argues that charge 1 specifies several additional types of ethical violations that the agency was required to prove to sustain the charge.  PFR File, Tab 1 at 11.  We agree with the administrative judge's finding that the agency was not required to prove that the appellant's conduct violated all of the ethics rules listed in the specifications to sustain the charge.  ID at 13 n.4; *see Suarez v. Department of Housing & Urban Development*, 96 M.S.P.R. 213, ¶¶ 20-39 (2004) (sustaining a charge that the appellant violated standards of ethical conduct, even though the agency did not

---

[1] The notice of proposed removal states that the action is being taken in accordance with 5 C.F.R. part 2635 and refers to these regulatory standards.  IAF, Tab 5 at 4-9. These regulations set forth Government-wide standards of ethical conduct, and specifically address all of the types of ethical violations mentioned in the notice of proposed removal:  a conflict of interest, impartiality, using public office for private gain, improper use of nonpublic information, and engaging in actions that create the appearance of a violation of ethical standards.  5 C.F.R. §§ 2635.101(b), 2635.402, 2635.501-502, 2635.702-703.

prove all of the specified types of ethical violations), *aff'd*, 125 F. App'x 1010 (Fed. Cir. 2005). Thus, the agency's charge does not fail on this basis.[2]

¶11     The appellant also argues that, although charge 1 is labeled "apparent" conflict of interest, the agency was required to prove that an actual conflict of interest existed because the specifications describe an actual conflict of interest. PFR File, Tab 1 at 14. This argument is unavailing. The notice of proposed removal accused the appellant of, among other things, "reasonably creating the appearance of a conflict of interest." IAF, Tab 5 at 4, 9. Creating the appearance of an ethical violation is a violation of the Standards of Conduct for Employees of the Executive Branch. 5 C.F.R. § 2635.101(b)(14). Thus, the agency could prove its charge by establishing that the appellant's conduct created the appearance of a conflict of interest under the standards of ethical conduct, even if it failed to prove an actual conflict of interest.

The agency has not proven that the appellant's outside activities on behalf of TBA created the appearance of a conflict of interest or loss of impartiality; thus, charge 1 cannot be sustained.

¶12     To prove the existence of a conflict of interest, an agency must establish that its employee was acting in two separate capacities, at least one of which involved his official duties and that the nature of his interests or duties in one capacity had a "direct and predictable effect" on his interests or duties in his other capacity. *Fontes v. Department of Transportation*, 51 M.S.P.R. 655,

---

[2] The agency did not file a cross petition for review on any issues and argues that the Board should sustain charge 1 based on evidence establishing that the appellant's actions created the appearance of a conflict of interest. PFR File, Tab 4 at 8-15. The agency argues that it was not required to prove each type of ethics violation specified in the proposal notice, and it makes no argument on review that it has done so. *Id.* at 9. Absent any argument from the agency, we will not address whether the appellant misused, or appeared to misuse, nonpublic information or his public office for private gain, although these matters were mentioned in the notice of proposed removal. IAF, Tab 5 at 4-5; *see* 5 C.F.R. § 1201.115 (the Board normally will consider only issues raised in a timely filed petition or cross petition for review).

663 (1991); *see* 5 C.F.R. §§ 2635.401-.402. To prove the existence of an appearance of a conflict of interest, an agency must show that the employee's interests or duties in one capacity would "reasonably create an appearance" of having an effect on his interests or duties in the other capacity. *Fontes*, 51 M.S.P.R. at 664. If an employee knows that a matter is likely to have a direct and predictable effect on the financial interest of a member of his household or knows that a person with whom he has a covered relationship is a party to the matter, and the employee determines that the circumstances would cause a reasonable person with knowledge of the relevant facts to question his impartiality in the matter, the employee should not participate in the matter unless he has received authorization from the agency to participate. 5 C.F.R. § 2635.502(a). "A particular matter will have a direct effect on a financial interest if there is a close causal link" between the action to be taken in the matter and "any expected effect of the matter on the financial interest." 5 C.F.R. § 2635.402(b)(1). A particular matter will not have a direct effect on the financial interest "if the chain of causation is attenuated or is contingent upon the occurrence of events that are speculative or that are independent of . . . the matter." *Id.*

¶13    "Employees shall endeavor to avoid any actions creating the appearance that they are violating . . . ethical standards." 5 C.F.R. § 2635.101(b)(14). "Whether particular circumstances create an appearance that ethical standards have been violated shall be determined from the perspective of a reasonable person with knowledge of the relevant facts." *Id*. Fundamental fairness precludes disciplining an employee for creating the appearance of an ethical violation unless he should have known it would appear improper to a reasonable observer under the circumstances. *Special Counsel v. Nichols*, 36 M.S.P.R. 445, 455 (1988).

¶14    The agency has not produced sufficient evidence to support the conclusion that TBA was involved in call centers while the appellant was conducting market

research into call centers except for internal discussions amongst TBA's officers to determine if this idea was feasible. IAF, Tab 5 at 146-47. We agree with the administrative judge's finding that the market research the appellant conducted on behalf of the agency concerning both local call centers and bilingual call centers nationwide gave him access to information about these businesses he would not have had in his personal capacity as the president of TBA. ID at 12-14. However, the appellant asked for ethics guidance about TBA's intended future activities before utilizing that information. IAF, Tab 4 at 89. The conclusion that TBA would have used this information even after the appellant received a response is too speculative to support the conclusion that a reasonable person would believe he violated the Government-wide standards of ethical conduct.

¶15     We find no evidence in the record to support the agency's conclusion that TBA made contact with call centers regarding a joint venture prior to the appellant notifying his supervisor and the agency ethics counselor about his outside activities. PFR File, Tab 4 at 11. The agency is relying entirely on the appellant's email to support this conclusion. *Id.* However, in this same email, the appellant stated that he had not spoken to any call center regarding any effort on a solicitation by the Government and that all of his work on behalf of TBA was focused on landscaping and grounds maintenance. IAF, Tab 5 at 94. In this email, the appellant also stated that he had conversations with small businesses focused on "general interest in joint venturing," but he did not specify that these conversations concerned call center services. *Id.* During the agency's investigation into this matter, the appellant further clarified that TBA had not pursued any involvement with a call center for the purposes of pursuing a Government contract and that there only had been internal conversations concerning a joint venture with a bilingual call center in the future. *Id.* at 146-47. The agency only became aware of the appellant's outside activities because he

sought guidance from his supervisor and the agency's ethics counselor about any potential conflict of interest.  *Id.* at 106-08.

¶16       Cause under 5 U.S.C. § 7513 generally connotes some action or omission on the part of an employee.  *Gonzalez v. Department of Homeland Security*, 114 M.S.P.R. 318, ¶ 10 (2010).  The Board consistently has found that creating the appearance of an ethical violation requires some action by the employee.  *See, e.g.*, *Burnett v. U.S. Soldiers' & Airmen's Home*, 13 M.S.P.R. 311, 313-15 (1982) (finding that the appellant created the appearance of using his public office for private gain by cashing checks belonging to a resident over a 1-year period); *Moffer v. Department of the Interior*, 8 M.S.P.R. 453, 455-57 (1981) (finding that an employee created the appearance that he had used his public office for private gain by purchasing land from a prohibited seller), *aff'd*, 690 F.2d 1037 (D.C. Cir. 1982).

¶17       The evidence establishes that once the appellant began considering a future plan for TBA to participate in Government contracts related to call center service, he raised the matter with agency officials.  IAF, Tab 4 at 89, Tab 5 at 146-47.  However, there is insufficient evidence of any action taken by the appellant or TBA that would support a finding that his conduct created the appearance of a conflict of interest or the appearance that he lost his impartiality.  *Cf. Wilson v. Department of Justice*, 66 M.S.P.R. 287, 297 (1995) (holding that charge of encouraging illegal sick leave use could not be sustained where there was no suggestion that the officer persuaded others to call in sick or that anyone acted on his statements); *Capozzella v. Federal Bureau of Investigation*, 11 M.S.P.R. 552, 557 (1982) (stating that a charge related solely to an employee's thought process cannot be considered misconduct).  Because we have found insufficient evidence to support the conclusion that the appellant took action to advance TBA's interest in bidding for call center or bilingual call center contracts prior to seeking advice from the agency's ethics counselor, we find that there is insufficient evidence to

support the conclusion that the appellant's actions created the appearance of a conflict of interest or the loss of impartiality.[3]

The agency has not established that the appellant was required to report his outside activities prior to September 4, 2013; thus, charge 2 is not sustained.

¶18        The agency also charged the appellant with failure to report an offense, status, or relationship.  IAF, Tab 5 at 5.  This charge was supported by two specifications.  *Id*.  The administrative judge did not sustain the first specification, which alleged that the appellant began exploring the idea of seeking Government contracts for call center service on behalf of TBA prior to May 9, 2013.  ID at 14-15.  The administrative judge found that the agency failed to present sufficient evidence to support a finding that the appellant began to explore the idea of seeking Government contracts for call center service before he was assigned to conduct market research on call centers for the agency, and therefore the first specification could not be sustained.  *Id.*  We agree.  The second specification cannot be sustained for similar reasons.

¶19        The second specification is that on December 12, 2013, the appellant stated to an agency investigator that he did not notify anyone in his supervisory chain or an agency ethics counselor about his status as an officer of, or his financial interest in, TBA because TBA's interest was in bilingual call centers only.  IAF, Tab 5 at 5.  The administrative judge found this an insufficient reason for the appellant's failing to provide notice about his outside activities.  ID at 15-16.  However, the agency has not shown that the appellant had an obligation to report his outside activities.

¶20        Employees are required to obtain prior approval before engaging in outside activities including employment when required by agency supplemental ethics

---

[3] Given this finding, we need not examine whether the agency's action of proposing the charge under the circumstances would have a chilling effect on employees seeking advice from the agency's ethics officer or whether the appellant would have been protected by the safe harbor provision of any ethics law, rule, or regulation.

regulations.  5 C.F.R. § 2635.803.  The agency has not submitted any evidence or argument establishing that it has a regulation requiring that employees obtain prior approval before engaging in all outside activities.  The agency instead relies on a portion of its ethics training concerning the Government-wide standards of ethical conduct, specifically financial conflicts of interest.  ID at 15; IAF, Tab 4 at 9.  The applicable regulation requires that an employee who becomes aware of the need to be disqualified from participating in a matter due to a financial conflict of interest should notify the person responsible for assigning him to the matter.  5 C.F.R. § 2635.402(c)(1).  An employee is required to disqualify himself from matters that will have a direct and predictable effect on his interests or any person whose interests are imputed to him.  5 C.F.R. § 2635.402(a)-(b).  A matter will have a predictable effect if there is a real, as opposed to a speculative, possibility that the matter will affect the financial interest.  *Id.*

¶21        The agency has not produced sufficient evidence to support a finding that the appellant should have disqualified himself from the market research project prior to when he reported his outside activities to his supervisor and an agency ethics official on September 4, 2013.  TBA incorporated on July 9, 2013.  IAF, Tab 4 at 47.  The appellant states that TBA's primary business focus is landscaping, grounds maintenance, and housekeeping services.  IAF, Tab 5 at 146-47.  The appellant's statement is corroborated by his supervisor's description of his conversations with the appellant about TBA's work in grounds maintenance on military facilities.  *Id.* at 110.  According to the appellant, TBA began considering the possibility of getting involved in Government contracts related to call center services at the end of August 2013.  IAF, Tab 14, Exhibit (Ex.) 1 at 3-4.  The appellant anticipated retiring by August 28, 2013.  IAF, Tab 4 at 81-84, Tab 5 at 147.  On August 28, 2013, the appellant asked his supervisor how long after retiring he would need to wait before working on a Government contract, and his supervisor referred him to an agency ethics counselor.  IAF, Tab 4 at 68.

¶22      On September 4, 2013, the appellant's supervisor asked him to continue his work on the agency's anticipated procurement of call center services. IAF, Tab 5 at 45. In response, the appellant asked to be recused and notified his supervisor of the potential conflict of interest because TBA was working on a joint venture with a call center. *Id.* The appellant subsequently clarified that the bilingual call center that TBA was considering entering into a joint venture with was the same call center where his sister-in-law worked. IAF, Tab 14, Ex. 1 at 3. The record indicates that the appellant had no contact with this bilingual call center prior to notifying his supervisor and the agency ethics counselor of the potential conflict of interest. *Id.* at 4. In the email the appellant sent to the agency ethics counselor on September 4, 2013, he erroneously states that the bilingual call center is located in El Paso, Texas. IAF, Tab 4 at 89. Until his trip to El Paso and discussion with his sister-in-law, the appellant was not even aware that the call center is located in Juarez, Mexico, and thus, being outside the United States, is ineligible for a Government contract. IAF, Tab 14, Ex. 1 at 3-4. We find that the appellant's plan to involve TBA in bidding for call center or bilingual call center contracts had not progressed to the point that it triggered an obligation to disqualify himself from the market research project and notify his supervisor prior to September 4, 2013. Based on the foregoing, we conclude that the agency has not proven charge 1 or charge 2, and its action suspending the appellant must be cancelled.

## ORDER

¶23      We ORDER the agency to cancel the 30-day suspension. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶24      We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Back Pay Act and/or Postal Service Regulations, as appropriate, no later than 60 calendar days after

the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶25     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

¶26     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶27     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶28     This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

## NOTICE TO THE APPELLANT
## REGARDING YOUR RIGHT TO REQUEST
## ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at title 5 of the U.S. Code (U.S.C.), sections 7701(g), 1221(g), 1214(g) or 3330c(b); or 38 U.S.C. § 4324(c)(4).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION.  You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.  You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.  *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012).  You may read this law as well as other sections of the U.S. Code, at our

website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.

|  | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



## NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts.

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

   a. Employee name and social security number.
   b. Detailed explanation of request.
   c. Valid agency accounting.
   d. Authorized signature (Table 63)
   e. If interest is to be included.
   f. Check mailing address.
   g. Indicate if case is prior to conversion.  Computations must be attached.
   h. Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1. Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2. Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3. Outside earnings documentation statement from agency.

4. If employee received retirement annuity or unemployment, provide amount and address to return monies.

5. Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7. If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

   a. Must provide same data as in 2, a-g above.
   b. Prior to conversion computation must be provided.
   c. Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.