Glenn D. PARSONS, Petitioner,

v.

UNITED STATES DEPARTMENT OF
the AIR FORCE, Respondent.

No. 82–1687.

United States Court of Appeals,
District of Columbia Circuit.

Argued March 17, 1983.

Decided May 6, 1983.

Michael S. Wolly, Washington, D.C., with whom Edward J. Hickey, Jr., Washington, D.C., was on the brief, for petitioner. Thomas A. Woodley, Washington, D.C., also entered an appearance for petitioner.

Jeffrey N. Gibbs, Sp. Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for respondent. Alan F. Greenwald, Atty., Merit Systems Protection Bd. and Michael J. Ryan, Asst. U.S. Atty., Washington, D.C., also entered appearances for respondent.

Before WALD and MIKVA, Circuit Judges, and SWYGERT,* Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit.

Opinion PER CURIAM.

PER CURIAM:

Petitioner, Glenn D. Parsons, seeks relief from a Merit Systems Protection Board (MSPB or Board) decision upholding his removal as a fire fighter at Tinker Air Force Base in Oklahoma by the United States Department of the Air Force (Air Force). On appeal, Parsons argues that because his discharge does not promote the "efficiency of the service" as required by 5 U.S.C. § 7513(a) and because the Air Force did not take into account any of the mitigating factors listed in the applicable Air Force regulations in assessing the penalty for his misconduct, the MSPB's decision must be set aside as arbitrary, capricious, and an abuse of discretion. In reply, the government argues that Parsons may not raise these issues for the first time on appeal. It also contends that even if Parsons may raise these issues, the Air Force's decision to discharge Parsons is not arbitrary, capricious, or an abuse of discretion because it

promotes the efficiency of the service and is an appropriate penalty for Parsons' misconduct. In light of its decision in *Douglas v. Veterans Administration*, 5 MSPB 313 (1981), we remand the case to the MSPB for further consideration.

## I. FACTS

The Air Force discharged Parsons from his position as a fire fighter because he falsified a government document and was absent from his job without authorization. The facts on which the Air Force relied in reaching its decision are not disputed on this appeal. In January 1980, Parsons, president of Local F–211 of the International Association of Fire Fighters, requested annual leave for March 22, 26, and 28, 1980, so that he might attend a union seminar in Reno, Nevada. Parsons' supervisors originally approved this leave, but on March 12, 1980, they told Parsons that they had cancelled his leave request for March 22 due to a shortage of available fire fighters on that date.

Parsons did not report to work on March 22. Prior to the beginning of his work shift on that day, he called the fire station at Tinker Air Force Base and told his supervisor that he was feeling ill and would be unable to come in to work. Parsons made this phone call from Albuquerque, New Mexico, en route to the union seminar in Reno.

Parsons returned to work on March 30. Either that day, or on April 1, he signed a sick leave request form (completed in all other respects by his supervisor), stating that he was requesting sick leave for March 22. On April 1 the fire chief at Tinker Air Force Base questioned Parsons regarding his whereabouts on March 22. Based on his answers and information it had obtained revealing that he had not been at home sick on that date,[1] the Air Force fired Parsons on July 2 for falsifying the sick leave form

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

1. At the MSPB hearing, Parsons' supervisors testified that Parsons did not answer their several telephone calls to his home on March 22, that they called his hotel in Reno early in the morning on March 23 and were told that he had checked in, and that he answered his hotel phone that morning. Joint Appendix at 20.

and for being absent from duty without authorization on March 22, 26, and 28, 1980.

Parsons appealed his discharge to the MSPB. Following an evidentiary hearing, the MSPB's presiding official sustained Parsons' discharge. The presiding official concluded that Parsons' testimony that he was sick on March 22 was not credible; as a result, he held that Parsons had indeed falsified a government document and taken unauthorized leave on March 22.[2] The presiding official rejected Parsons' arguments that the Air Force had committed procedural error when it denied him union representation on April 1 while he was being questioned about his activities on March 22; that the questioning violated his right to representation under Air Force Regulation 40–750 § C(12),[3] 5 U.S.C. § 7114(a)(2)(B)(ii),[4] or the collective bargaining agreement between the Air Force and the fire fighters; and that the Air Force fired him because of his position with the union.

The presiding official also determined that Parsons' removal promoted the "efficiency of the service."[5] The presiding official noted evidence from the deputy fire chief at Tinker Air Force Base that firemen have to protect life and property, that government officials must be able to depend upon and trust their employees, that a piece of fire equipment had to be taken out of service at Tinker Air Force Base on March 22, and that Parsons had a prior offense that, although it was not relied upon in removing Parsons, also raised questions of credibility and truthfulness. An agency "has the right to expect its employees to be truthful in all matters of official business," the presiding official concluded, and Parsons' action in falsifying an official government document struck "to the very heart of the employer-employee relationship." Joint Appendix at 30–31.

On December 1 Parsons appealed this decision to the full Board,[6] arguing that the presiding official's decision that Air Force Regulation 40–750 § C(12), dealing with his right to representation during examination, did not apply to his case was an erroneous interpretation of the regulation. He also contended that the presiding official erred

2. The presiding official concluded that Parsons' absences on March 26 and 28 were not unauthorized.

3. AFR 40–750 § C(12) provides:

    12. Personal Representation:
    a. An employee who has received a notice of proposed disciplinary action or adverse action may obtain advice and assistance in the preparation of his or her reply. In addition, the employee may be accompanied by a representative of his or her own choosing when making his or her oral reply to a proposed adverse action. . . .
    b. An exclusive representative of an appropriate unit . . . shall be given the opportunity to be represented at any examination of an employee in the unit by a representative of the agency in connection with an investigation if:
    (1) The employee reasonably believes that the examination may result in disciplinary action against the employee; and,
    (2) The employee requests representation.

4. 5 U.S.C. § 7114(a)(2)(B)(ii) provides:
    (a) . . .
    (2) An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at—. . .

    (b) Any examination of an employee in the unit by a representative of the agency in connection with an investigation if—. . .
    (ii) the employee requests representation.

5. The Civil Service Reform Act provides that the federal government employer may discharge its employees "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a). The Act further provides that, other than in the case of a criminal conviction, an agency may take disciplinary action against an employee only on the basis of conduct that adversely affects the performance of the employee himself or of other employees. 5 U.S.C. § 2302(b)(10). Administrative regulations adopted to effectuate the purposes of the Act specify that disciplinary action against any employee to "promote the efficiency of the service" must be based on an evaluation of (1) whether the conduct of the individual may reasonably be expected adversely to affect effective performance by the employee of the duties of his position, or (2) whether such conduct may reasonably be expected adversely to affect the effective performance by the agency itself of its duties and responsibilities. 5 C.F.R. §§ 731.201, 731.202(a) (1983).

6. Parsons was not represented by counsel either at the hearing or before the full Board.

when he refused to give consideration to specific negotiated agreements between the Air Force and the union because they were not entered into evidence at the hearing. In a two-page order issued on June 11, 1981, the MSPB upheld the initial decision. This appeal followed.

## II. ANALYSIS

■ In an agency removal action based on employee misconduct, the agency must make three determinations: (1) that the employee actually committed the alleged misconduct; (2) that there is a sufficient nexus between the misconduct and the efficiency of the service to sustain an adverse action; and (3) that the penalty imposed has been appropriately chosen for the specific misconduct involved.[7] *See Young v. Hampton,* 568 F.2d 1253, 1257, 1264 (7th Cir.1977); *Douglas v. Veterans Administration,* 5 MSPB 313, 329 (1981). The agency has the burden of persuasion regarding these three elements of its decision and is therefore obligated to present evidence to the Board necessary to support each element. *See Douglas v. Veterans Administration,* 5 MSPB at 334.

We do not quarrel with the MSPB's determination that the Air Force made the necessary showing that Parsons' alleged misconduct actually occurred and that it had a nexus to the efficiency of the service. On the record before us, however, we do not think the Air Force carried its burden of persuasion regarding the appropriateness of Parsons' discharge for his misconduct.

■ The MSPB reviews agency personnel actions so that, *inter alia,* they will not be declared arbitrary, capricious, an abuse of discretion, not in accordance with law, procedurally incorrect, or unsupported by substantial evidence when reviewed by appellate courts under 5 U.S.C. § 7703(c). *Douglas v. Veterans Administration,* 5 MSPB at 328. Thus, to assure that agency *penalty* decisions will meet the requirements of § 7703(c), "the Board must . . . review the agency's penalty selection to be satisfied (1) that on the charges substantiated by the Board the agency's penalty is within the range allowed by law, regulation, and any applicable table of penalties, and (2) that the penalty 'was based on a consideration of the relevant factors and [that] . . . there has [not] been a clear error of judgment.' "[8] *Id., quoting Citizens to Protect Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

The Office of Personnel Management's (OPM's) Federal Personnel Manual (FPM) specifically discusses the factors that may be relevant to agencies' selection of disciplinary sanctions. *See* FPM, ch. 751, subch. 1–2 (1976). It advises agencies to " 'give consideration to all factors involved when deciding what penalty is appropriate, including not only the gravity of the offense but such other matters as mitigating circumstances, the frequency of the offense, and whether the action accords with justice in the particular situation.' " *Douglas v.*

---

7. As *Douglas* points out, the question of the appropriateness of a particular penalty is separate and distinct from the question of whether there is an adequate nexus between the grounds for an adverse action and the "efficiency of the service." *Douglas v. Veterans Administration,* 5 MSPB at 329. Before an agency can properly conclude that a particular penalty will promote service efficiency, it must determine "that the penalty takes reasonable account of the factors relevant to promotion of [such] efficiency in the individual case. Thus, while the efficiency of the service is the ultimate criterion for determining both whether *any* disciplinary action is warranted and whether the *particular* sanction may be sustained, those determinations are quite distinct and must be separately considered." *Id.* at 330.

8. The Air Force's table of penalties is set forth at Attachment 1 to AFR 40–750, Joint Appendix at 86–91. The table provides the following penalties: (1) for unauthorized absences of eight hours or less, reprimand for the first offense, reprimand to five-day suspension for the second offense, and reprimand to removal for the third offense; (2) for failures to honor valid denials of leave requests, reprimand to five-day suspension for the first offense, reprimand to ten-day suspension for the second offense, and five-day suspension to removal for the third offense; and (3) for falsifying a government document, reprimand to removal for the first and second offenses and five-day suspension to removal for the third offense. *Id.* at 87–88.

*Veterans Administration,* 5 MSPB at 330–31, *quoting* FPM, ch. 751, subch. 1–2(c)(2). Any disciplinary action, the FPM notes, must be responsibly undertaken so that the affected employee is not penalized out of proportion to the actual offense. *Id.* at 330; FPM, ch. 751, subch. 1–2b. Under some circumstances, " 'an unduly harsh penalty can effectively ruin [an agency's] . . . goal of deterrence.' " *Id., quoting Power v. United States,* 531 F.2d 505, 509 (Ct.Cl. 1976). Thus, such adverse actions as suspensions or removals may be taken only after the agency has determined that " 'a less severe penalty, such as admonition or reprimand, is inadequate.' " *Id., quoting* FPM, ch. 751, subch. 1–2b.

▮ While an agency decision notice need not contain information showing that the agency has explicitly considered all possible mitigating factors before concluding that a lesser penalty would be inadequate, an agency's selection of a particular penalty must still be demonstrably based on a responsible balancing of the relevant factors in the individual case. *Douglas v. Veterans Administration,* 5 MSPB at 331–32. An agency must therefore select an appropriate disciplinary sanction based on the specific facts of the particular case before it; it may not automatically impose a fixed penalty for a specific category of misconduct regardless of individual factors. *Id.* at 330, 333.

As we noted above, the selection of an appropriate penalty is a distinct element of an agency's decision. The agency therefore has the ultimate burden of persuading the MSPB of the appropriateness of the penalty imposed. *Douglas v. Veterans Administration,* 5 MSPB at 333. This is necessary even if—as in Parsons' case—the penalized employee has not raised a question as to the appropriateness of the imposed sanction:

In many cases the penalty, as distinct from the underlying conduct alleged by the agency, will go unchallenged and need not require more than prima facie justification. *An agency may establish a prima facie case supporting the appropriateness of its penalty by presenting to the Board evidence of the facts on which selection of the penalty was based, a concise statement of its reasoning from those facts or information otherwise sufficient to show that its reasoning is not on its fact [sic] inherently irrational, and by showing that the penalty conforms with applicable law and regulation.* When no issue has been raised concerning the penalty, such a prima facie case will normally suffice to meet also the agency's burden of persuasion on the appropriateness of the penalty.

*Id.* at 334 (emphasis added).

▮ Parsons, unrepresented by counsel, did not challenge the appropriateness of his discharge before the MSPB. Under *Douglas,* the Air Force therefore needed only to establish a prima facie case at the MSPB hearing indicating that it had given the necessary consideration to relevant factors in deciding that Parsons' discharge was appropriate[9] and that his removal did not

---

9. The applicable Air Force Regulation, AFR 40–750 § C(11)(b), suggests the following factors be considered:
(1) The employee's past work and disciplinary history including the nature and recency of other offenses;
(2) The nature and extent of the employee's contributions to the Federal service (awards, and so forth);
(3) The opportunity for constructive rehabilitation;
(4) The character of position to which the employee is assigned (the more responsible the position, the more rigorous the standard of performance or conduct);
(5) The nature and consequences of the offense;

(6) The possibility of misunderstanding, misinterpretation, enticement or provocation;
(7) The existence of contributory inefficiency or misconduct on the part of others;
(8) The degree to which the employee could control timing, location or events;
(9) The types and severity of corrective action available.
*See* Joint Appendix at 76.
OPM (formerly Civil Service Commission) issuances also cite a number of factors that are relevant in determining the appropriateness of a penalty, including:
(1) The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or

clearly exceed the limits of reasonableness.[10]

We do not find any such demonstration by the agency here, nor did the MSPB supply it.[11] There are several reasons why we reach this conclusion. First, although the Air Force stated in its "Notice of Proposed Removal" sent to Parsons on May 24, 1980, that "[i]n determining the action to be proposed, consideration was given to your previous disciplinary record [a reprimand for failure to honor a debt or to keep an agreement to liquidate that debt]," one of Parsons' supervisors, Chief Dunkin, later testified that the Air Force did not take that offense into account when it decided to remove Parsons. Joint Appendix at 12, 39. Second, at the time the Air Force chose to discharge Parsons, he was accused not only of falsifying a government document, but also of being absent without authorization on three dates; the MSPB's presiding official, however, subsequently found that Par-

technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;

(2) the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;

(3) the employee's past disciplinary record;

(4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;

(5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;

(6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;

(7) consistency of the penalty with any applicable agency table of penalties;

(8) the notoriety of the offense or its impact upon the reputation of the agency;

(9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;

(10) potential for the employee's rehabilitation;

(11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and

(12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others.

*See Douglas v. Veterans Administration,* 5 MSPB at 331–32, 331 n. 66; 5 C.F.R. § 731.-202(c) (1983); Federal Personnel Manual, ch. 751, subch. 1–2 (1976).

We again emphasize that the Air Force did not have to discuss all these factors to establish a prima facie case that discharge was an appropriate penalty for Parsons' misconduct. The Air Force did have to indicate, however, as it did not do here, that it had considered these factors, and it had to demonstrate, which it

also failed to do, that removal was within the limits of reasonableness in this case.

**10.** Several sections of Air Force Regulation 40–750 direct the Air Force to choose the minimum penalty necessary to correct employee misconduct, to take into consideration all material factors in selecting the minimum penalty, and to avoid using penalties merely to punish the guilty employee. *See* AFR 40–750 §§ B(8)(d), D(18), D(19), and D(19)(e)(2). Joint Appendix at 75, 79, 81, 83. It is clear from the Air Force's own table of penalties that it chose to impose the maximum penalty possible on Parsons. *See* Attachment 1 to AFR 40–750, *id.* at 87–88; *supra* note 8.

**11.** We recognize, of course, that the Air Force and the MSPB's presiding official did not have the benefit of *Douglas* when they made their decisions, since the MSPB issued *Douglas* on April 10, 1981, and the initial MSPB decision in this case was made on November 13, 1980. This may very well explain why there are so few references to the appropriateness of the Air Force's choice of penalty in the record. At the same time, the decision of the full Board was issued *after* it decided *Douglas,* on June 11, 1981. In these circumstances, we do not think the MSPB should be allowed to disregard its own precedent or that the Air Force should not be required specifically to meet the *Douglas* requirements. Indeed, in a similar case involving an appeal from an MSPB decision made *before Douglas* was decided but appealed to this court *after* that decision, we remanded the case to the MSPB for "reconsideration in light of the intervening decision in *Douglas v. Veterans Administration.*" *Ligon v. The District of Columbia,* MSPB Case No. DC0752809030 (April 28, 1982). On remand, the MSPB explicitly considered the *Douglas* factors and upheld the appropriateness of Ligon's discharge as a clerk-typist from the Central Services Division of the Government of the District of Columbia. *Id.* Ligon is now challenging the latest MSPB decision before this Court as arbitrary, capricious, and an abuse of discretion. *Ligon v. The District of Columbia,* 706 F.2d 1229, No. 82–1621.

sons had been absent without authorization on only one of those dates. Third, although Parsons' supervisors knew that his claim for sick leave was fraudulent and were presumably considering discipline against him by the time he returned to work on March 30, upon his return they still presented him with a completed sick leave form to sign, a form that now constitutes the core of the charges against him. Finally, there is no evidence that the Air Force or the MSPB took into consideration that during the nearly ten years he had worked for the federal government, Parsons had previously been subject to only one other disciplinary action, for conduct unrelated to his government work; that in 1979 he received a letter of appreciation from the Air Force for not using any of the sick leave he had accrued in 1978; and that aside from the incident involved here his supervisors had no fault to find with his work performance.

Indeed, we are inclined to conclude that imposition of the drastic penalty of removal here was based *solely* on the nature of Parsons' offense of falsifying an official sick leave form *without any consideration of factors relevant to his individual case.* In answering a question at the hearing before the MSPB's presiding official as to why he felt Parsons could not be rehabilitated, Chief Dunkin testified that "[o]f course, we have regulations to follow, 40–750. We feel that the type of person Mr. Parsons—we need dependable people on that Fire Department; and I feel that *anybody that falsifies a document, of all things, we don't have any need for.*" Joint Appendix at 40 (emphasis added). And in his decision of November 13, 1980, the MSPB's presiding official stated that, "[w]hile it may be argued that the one offense of unauthorized absence which has been sustained would not be serious enough to warrant removal, appellant's offense of falsifying a government document certainly warrants such action [because it] strikes to the

very heart of the employer-employee relationship ... violate[s] the trust necessary to the continuance of [that] relationship and ... adversely affect[s] the efficiency of the service ... [A]n agency has the right to expect its employees to be truthful in all matters of official business." *Id.* at 30–31.

The Air Force's failure to consider the factors relevant to its choice of penalty in this case is of particular concern here because its own table of penalties—to which *Douglas* commends agency compliance—provides for a range of penalties for falsification of an official document extending from reprimand to removal; it does not even permit removal for a first-offense unauthorized absence or failure to honor a valid denial of a leave request.[12] *See* "Guide to Disciplinary Actions," Attachment 1 to AFR 40–750, Joint Appendix at 87–88. These same regulations specifically admonish the Air Force to choose the "minimum penalty capable of producing the desired correction." *Id.* at 75. Moreover, they state that penalties solely motivated by a desire to punish are not appropriate and that removal should be based on the offense alone only where the misconduct is "so serious or the violation of rules and regulations so flagrant that discharge for a first ... offense is clearly warranted." *Id.* at 75, 83.

Given the number of potentially mitigating factors in this case, coupled with the paucity of evidence in the record that the agency, the presiding official, or the MSPB considered anything beyond the nature of Parsons' misconduct in deciding to discharge him, we cannot comfortably conclude that the requirements of *Douglas* have been met here. The Air Force must present at least a prima facie case to the MSPB establishing that it considered the factors relevant to this particular case and that it reasonably chose to impose this particular penalty. Were we to affirm the

---

12. Indeed, Parsons only became subject to the most severe penalty of removal because he falsified an official document by signing the sick leave form his supervisors gave him—even though they knew he had not been sick.

MSPB's decision without remand for such a presentation, we would be ignoring—or permitting the MSPB to ignore—its own major decision regarding agency selection of appropriate penalties. We therefore remand the case to the MSPB so that it may consider the appropriateness of Parsons' penalty in light of *Douglas.*[13]

*So Ordered.*

---

**13.** It is well settled that we may require an agency to follow its own prior rulings and regulations. *See, e.g., Service v. Dulles,* 354 U.S. 363, 372, 77 S.Ct. 1152, 1157, 1 L.Ed.2d 1403 (1957); *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954). It is equally well settled that an agency, although free to alter its past rulings and practices, must provide a reasoned explanation for any failure to adhere to its own precedents. *See, e.g., Atchison, Topeka & Santa Fe Ry. Co. v. Wichita Board of Trade,* 412 U.S. 800, 806–17, 93 S.Ct. 2367, 2374, 37 L.Ed.2d 350 (1973); *Hatch v. Federal Energy Regulatory Commission,* 654 F.2d 825, 834 (D.C.Cir.1981). The MSPB provided no such explanation here. If it intends to depart from *Douglas,* which we doubt, it needs to set forth its reasons for doing so.

In addition, this Court has recently remanded a case to the MSPB for a similar reconsideration, *see Ligon v. The District of Columbia,*

*supra* note 11, and other cases in this circuit have, at least implicitly, suggested that the government must make a showing that it has taken the *Douglas* factors into account in determining the proper penalty for employee misconduct. *See Moffer v. Watt,* 690 F.2d 1037, 1041 n. 14 (D.C.Cir.1982) (per curiam) (the MSPB's explicit reference to *Douglas* in its order constitutes sufficient indication that it took into account potentially mitigating considerations in accordance with that decision); *Gipson v. Veterans Administration,* 682 F.2d 1004, 1012 n. 15 (D.C.Cir.1982) (although the MSPB did not list each of the *Douglas* factors arguably relevant to the penalty imposed here, because it cited its ruling in *Douglas* and indicated that it had considered the potentially mitigating factors in accordance with that opinion, it adequately disclosed its reasoning process and did not "cross[ ] the line from the tolerably terse to the intolerably mute").