**Ruth O. GLOSTER, Petitioner,**

v.

**GENERAL SERVICES ADMINISTRATION, Respondent.**

**No. 82–1774.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 23, 1983.

Decided Oct. 28, 1983.

---

Mark D. Roth, Washington, D.C., with whom James R. Rosa, Washington, D.C., was on brief, for petitioner.

Regina C. McGranery, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on brief, for respondent.

Before WALD and EDWARDS, Circuit Judges, and SWYGERT,* Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit.

Opinion for the Court filed by Senior Circuit Judge SWYGERT.

SWYGERT, Senior Circuit Judge.

The petitioner, Ruth O. Gloster, seeks review of a decision by the Merit Systems Protection Board ("MSPB" or "Board") upholding her dismissal from a position as a custodial employee of the General Services Administration ("GSA") following her conviction on a charge of welfare fraud. She argues that the MSPB's decision must be set aside because the GSA failed to demonstrate that her removal would "promote the efficiency of the [civil] service" as required by 5 U.S.C. § 7513(a) (1982), and failed to consider mitigating factors in determining the appropriate degree of punishment. Because we find that no nexus between her offense and the efficiency of the service was shown, we need not reach the second of these arguments.

I

Gloster was a low-level custodial employee of the GSA between January 26, 1966, and June 5, 1981. Other than being reprimanded in 1980 for failing on one day to empty trash baskets on time, she "was always a good employee" according to her foreman, Joint Appendix ("JA") 31, and once received an outstanding rating for attendance. While temporarily unemployed in 1972 she began receiving welfare payments, and apparently continued to receive monthly payments to which she was not entitled after she resumed work, motivated by a desire "to provide for the economic survival of herself and her three children." *Gloster v. GSA*, No. DCO7528110606, slip op. at 3 (MSPB Sept. 28, 1981). In 1978 she voluntarily terminated the payments. In April 1980 she was charged with having unlawfully received welfare payments while employed, and on June 17, 1980, she pled guilty to one count of making a $314.10 false claim against the government by having presented the February 1978 welfare check for payment, in violation of 18 U.S.C. § 287 (1976). She received a suspended sentence and three years' probation, agreed to make restitution to the government at the rate of $10.00 per month, and undertook to perform one hundred hours of community service with alacrity.

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

On March 17, 1981, the Assistant Regional Administrator of the Public Buildings Service notified Gloster of the GSA's proposed decision to discharge her, citing her conviction and her 1980 reprimand. After consideration of letters urging leniency submitted by Gloster, her appointed attorney, and her probation officer, the GSA notified Gloster by undated letter that its decision had been made final and that her discharge would become effective on June 5, 1981. She filed a timely appeal with the MSPB on June 2, and a hearing was held on August 25. At the hearing both the Assistant Regional Administrator, who participated in the preliminary decision to discharge Gloster, and the GSA Regional Administrator, who made that decision final, testified that Gloster occupied a "position of trust" because she spent some time cleaning offices after business hours. JA 37–38, 52, 54. Nevertheless, both witnesses testified that her offense was unrelated to her job performance, and that she was discharged simply because it was unseemly to allow someone who had defrauded the government to continue working for the government. JA 42–43, 46, 54.[1] The Regional Administrator further testified that the 1980 reprimand was not a factor in the decision to dismiss Gloster, JA 60, and that no notoriety surrounded her conviction, JA 59. Gloster's probation officer testified that when he had discussed the importance of continued employment for Gloster's rehabilitation with these GSA officials, each responded that

GSA policy required dismissal of employees convicted of criminal offenses. JA 83. At the time of the hearing Gloster was unemployed and had reapplied for welfare.

In its initial decision, later made final after the filing of a petition for review by the full Board, the MSPB found that the requisite nexus between Gloster's offense and the efficiency of the service existed, stating:

> Although appellant's off-duty offense does not reflect adversely on her ability to perform her duties as a Custodial Laborer, and there was no notoriety involved, I find that a nexus exists in this case, because appellant engaged in fraud against the federal government and also because she occupied a position of trust . . . . Obviously, the government has a legitimate interest in protecting itself against fraudulent acts and in having trustworthy employees occupy positions of trust.

*MSPB v. Gloster, supra,* slip op. at 3. The MSPB also determined that dismissal was an appropriate penalty because, "[a]lthough appellant has a good employment record over fifteen years, and it is unlikely that she will repeat the offense, it is a serious offense for any federal employee to defraud the government." *Id.* at 4. This petition for review followed.

## II

The Civil Service Reform Act of 1978 provides that federal agencies may

---

1. The Assistant Regional Administrator, when asked whether Gloster's conviction made her a security risk, stated:

   The panel's concern was not that she was going to steal a calculator or steal someone's personal effects. It was a concern that she had violated her trust in her job as a government employee, on the one hand, receiving a pay check from the government, and on the other hand, receiving funds from the government that she should not have ever received. JA 42. He later repeated his lack of concern about Gloster's job performance:

   As I stated before, in the deliberations of the panel her performance as a custodial laborer—it was not considered that there was a connection between the offense and her performance, but that there was a connection between the offense and her position as an employee of the United States Govern-

ment. . . . It would not have mattered if she were an elevator operator, a mechanic, a buildings manager, whatever.

JA 46. Similarly, the Regional Administrator stated:

   Where we could reasonably argue that some conduct is less consequential or less significant than some other cases, nevertheless, there is a standard of trust that has to be maintained within the entire federal family. And it is very important that those who have—who are in a position of trust have the proper management support and emphasis to continue behaving in a trustworthy manner, and that those who violate that standard be removed from the service. And I think that is essential for the health of the organization and the federal service in general.

JA 54.

discharge employees "only for such cause as will promote the efficiency of the service." 5 U.S.C. § 7513(a) (1982). Regulations promulgated under the Act by the Office of Personnel Management ("OPM"), which has the authority to direct agencies to remove employees detrimental to the efficiency of the service, 5 C.F.R. § 731.201 (1983), somewhat clarify this standard, specifying that in exercising this power the OPM must consider the effect of the proposed action on the performance by the individual employee and on the performance by the agency. *Id.* § 731.202(a). The efficiency-of-the-service standard therefore has been interpreted, in accordance with judicial interpretation of similar standards in prior statutes, to require an agency that proposes to remove an employee for misconduct to demonstrate a sufficient nexus between the misconduct and the job performance of the employee or others to warrant removal. *Parsons v. United States Department of the Air Force,* 707 F.2d 1406, 1409 (D.C.Cir. 1983); *cf. Hoska v. United States Department of the Army,* 677 F.2d 131, 136–38 (D.C.Cir.1982) (interpreting similar standard in Army's security clearance regulation); *Young v. Hampton,* 568 F.2d 1253, 1257 (7th Cir.1977) (interpreting similar standard under Act's predecessor); *Norton v. Macy,* 417 F.2d 1161, 1165–66 (D.C.Cir. 1969) (same). The nexus requirement is particularly strict in cases involving non-work-related misconduct. *See Hoska v. United States Department of the Army,* 677 F.2d at 144 n. 22.

The Act further reinforces this interpretation by providing that an agency may not

> discriminate for or against any employee ... on the basis of conduct which does not adversely affect the performance of the employee ... or the performance of others; except that nothing in this paragraph shall prohibit an agency from taking into account in determining suitability or fitness any conviction of the employee ... for any crime ....

5 U.S.C. § 2302(b)(10) (1982). The proviso in this section does not mean, however, that an agency may dispense with the requirement of demonstrating a nexus between its disciplinary action and the efficiency of the service when the misconduct complained of is criminal. The Conference Report on the bill that was enacted as the Civil Service Reform Act explains the purpose of the proviso as follows:

> [C]onviction of a crime may be taken into account when determining fitness or suitability of an employee or applicant. This provision is not meant as an encouragement to take conviction of a crime into account when determining the suitability or fitness of an employee or applicant for employment. Nor is it to be inferred that conviction of a crime is meant to disqualify an employee or an applicant from employment. The conferees intend that only conduct of the employee or applicant that is related to the duties to be assigned to an employee or applicant or to the employee's or applicant's performance or the performance of others may be taken into consideration in determining that employee's suitability or fitness. Conviction of a crime which has no bearing on the duties to be assigned to an employee or applicant or on the employee's or applicant's performance or the performance of others may not be the basis for discrimination for or against an employee or applicant.

H.R.Conf.Rep. No. 1717, 95th Cong., 2d Sess. 131 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 2723, 2860, 2864.

■ Although the requirement of a showing of nexus therefore is not excused in cases involving criminal offenses, both the MSPB and this court have held that in some circumstances the nature and gravity of an off-duty offense and the nature of the offender's duties justify a presumption (actually an inference) that such a nexus exists, eliminating the need to adduce evidence to make a particular showing of impairment of the efficiency of the service. *See Moffer v. Watt,* 690 F.2d 1037, 1040 n. 12 (D.C.Cir.1982); *Yacovone v. Bolger,* 645 F.2d 1028, 1032 (D.C.Cir.), *cert. denied,* 454 U.S. 844, 102 S.Ct. 159, 70 L.Ed.2d 130 (1981); *Gueory v. Hampton,* 510 F.2d 1222, 1226 (D.C.Cir.1974) (prior law); *Merritt v.*

*Department of Justice,* 6 M.S.P.B. 493, 509 (1981). In such cases the additional evidence has been considered unnecessary because

> where the adverse effect of retention on the efficiency of the service could, in light of the nature of the misconduct, reasonably be deemed substantial, and where the employee can introduce no evidence showing an absence of effect on the efficiency of the service, the nature of the misconduct may "speak for itself."

*Young v. Hampton,* 568 F.2d at 1257. *See also Moffer v. Watt,* 690 F.2d at 1040 n. 12 ("In this case, the intimate connection between the petitioner's misconduct and his public responsibilities speaks for itself.").

The MSPB has held that welfare fraud by a custodial employee raises such a presumption of nexus, justifying dismissal. *Gamble v. U.S. Postal Service,* 6 M.S.P.B. 487, 489–90 (1981). Although the propriety of the use of such presumptions has been successfully challenged elsewhere as contrary to the Act, *see Bonet v. United States Postal Service,* 661 F.2d 1071, 1077–79 (5th Cir.1981) (no presumption of nexus simply because off-duty offense is egregious), we need not here reexamine our holdings that a nexus may sometimes be presumed, or even consider whether the MSPB was justified in concluding that welfare fraud raises such a presumption in the context of custodial employment. Both our cases and the Board's have emphasized that the inference of impairment of the efficiency of the service may be rebutted. *Gueory v. Hampton,* 510 F.2d at 1227; *Gamble v. U.S. Postal Service,* 6 M.S.P.B. at 489; *Merritt v. Department of Justice,* 6 M.S.P.B. at 509 ("[T]he presumption may be overcome by evidence showing an absence of adverse effect on service efficiency, in which case the agency may no longer rely solely on the presumption but must present evidence to carry its burden of proving nexus."); *see also Young v. Hampton, supra,* 568 F.2d at 1257.

■ In the present case whatever force the MSPB's presumption commanded was dispelled by Gloster's contention, and the GSA's confirmation, that her conviction bore no relation to her job performance, and was not notorious so as to discredit the agency or otherwise affect the performance of others. The MSPB did accept the GSA's contention that Gloster occupied a "position of trust," but the GSA disclaimed any reliance on a theory that her offense made her access to untended offices pose a security risk. Rather, the "position of trust" theory seems to posit that past offenses may render one unworthy of government service regardless of the effect, or lack of effect, on the functioning of the agency. This theory, however, is contrary to the theory of the Civil Service Reform Act that disciplinary actions may be taken only in the service of efficiency. The federal government and society in general certainly do not condone welfare fraud, but punishment for such offenses is entrusted by the Act to the criminal process so long as the offense has no work-related effects. Here the MSPB specifically found that such effects were lacking.

■ The GSA also argued before the Board that Gloster's dismissal would deter others from engaging in similar misconduct, and that her retention would depress the morale of other employees. It thereby sought to show that its action would promote the efficiency of the service because of its effect on the performance of other employees. But this contention cannot be reconciled with the GSA's admission, and the MSPB's finding, that no notoriety was involved. Without the factual predicate that other employees knew of Gloster's conviction, we cannot conceive how their performance would be affected by her dismissal. The GSA's argument seems instead to seek to recapitulate the "position of trust" theory that retention of wrongdoers is inherently undesirable, a theory we have already found to be at odds with the Act. Even apart from the flaws and incongruities in the GSA's argument, however, its position could not support affirmance of the MSPB's decision, because the Board did not rely on the theory that Gloster's treatment would affect the job performance of others. It is well established "that a reviewing court, in dealing with a determination or judgment which an administrative agency

alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *SEC v. Chenery Corp.,* 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947).

To sustain its disciplinary decisions an agency must persuade the MSPB that the employee actually committed the offense in question, that a nexus between its proposed action and the efficiency of the service exists, and that the proposed penalty is appropriate. *Parsons v. United States Department of the Air Force,* 707 F.2d at 1409. In reviewing Board decisions we in turn must examine whether its resolution of these questions is supported by substantial evidence. 5 U.S.C. § 7703(c)(3) (Supp. V 1981) (current version, vesting review in the United States Court of Appeals for the Federal Circuit, at *id.* (1982)). Because no evidence suggested a connection between Gloster's dismissal and service efficiency, and any possible inference of such a connection was rebutted by the GSA's own contentions and the MSPB's findings, we reverse the decision of the Board and remand the case with directions to order reinstatement and back pay.

*So ordered.*