**Jeffrey OTHERSON, Petitioner,**

v.

**DEPARTMENT OF JUSTICE, IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 82–1761.

United States Court of Appeals, District of Columbia Circuit.

Submitted Aug. 5, 1983.

Decided March 6, 1984.

Gordon P. Ramsey, Boston, Mass., for petitioner.

J. Paul McGrath, Asst. Atty. Gen., Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, Robert S. Greenspan and John S. Koppel, Attys., Dept. of Justice, Washington, D.C., were on the brief, for respondents. Alan F. Greenwald, Atty., Merit Systems Protection Bd., Washington, D.C., also entered an appearance for respondent.

Before ROBINSON, Chief Judge, TAMM, Circuit Judge, and GORDON,* Senior District Judge.

---

* Of the United States District Court for the Western District of Kentucky, sitting by designation pursuant to 28 U.S.C. § 294(d) (1976).

Opinion filed PER CURIAM.

Dissenting opinion filed by Senior District Judge JAMES F. GORDON.

PER CURIAM:

This case comes before the court on a petition to review an order of the Merit System Protection Board (MSPB)[1] upholding the temporary suspension without pay of petitioner Otherson by the Immigration and Naturalization Service (INS) from his employment as a Border Patrol agent.[2] Otherson was suspended pending trial on an indictment accusing him of conspiring to defraud the United States[3] and of depriving aliens suspected as illegal entrants of their civil rights under color of law;[4] later, following his conviction,[5] Otherson was permanently removed from service. Only the temporary suspension is now in issue.[6]

Otherson contends (1) that the fact of indictment for job-related criminality, standing alone, cannot constitute statutory "cause" to temporarily suspend an employee;[7] (2) that such a suspension without pay, when so based, violates the Due Process Clause of the Fifth Amendment;[8] and (3) that in Otherson's instance, temporary suspension was an unreasonable penalty, and thus did not promote the "efficiency of the service."[9] We find these claims wanting and accordingly affirm.

■ Our recent decision in *Brown v. Department of Justice*[10] disposes of Otherson's first two arguments. There we held that neither the Due Process Clause[11] nor any relevant statute[12] prohibits a temporary suspension without pay of a Border Patrol agent though predicated solely on a criminal indictment for job-related activity.[13] With regard to Otherson's third thesis— that, under the circumstances, temporary suspension was an unreasonable penalty— our task is to determine whether MSPB has " 'review[ed] the agency's penalty selection to be satisfied (1) that on the charges substantiated by [MSPB] the agency's penalty is within the range allowed by law, regulation, and any applicable table of penalties, and (2) that the penalty "was based on a consideration of the relevant factors and . . . there has [not] been a clear error of judgment." ' "[14]

1. The petition for review was filed here prior to the effective date of the Federal Courts Improvement Act of 1982, Pub.L. No. 97–164, 96 Stat. 25 (1982) (codified primarily in scattered sections of 28 U.S.C.), which confers jurisdiction to review MSPB orders exclusively upon the Court of Appeals for the Federal Circuit. 28 U.S.C.A. § 1295(a)(9) (West Supp.1983).

2. MSPB reversed the initial decision of the presiding official, which had held Otherson's suspension unreasonable. *Dick v. Department of Justice,* No. SF075209119 (MSPB June 1, 1982) (decision and order), Appendix (App.) 111.

3. Pursuant to 18 U.S.C. § 371 (1982).

4. Pursuant to 18 U.S.C. § 242 (1982). More specifically, Otherson allegedly abused these aliens over a two-month period, concealed this maltreatment, and misinformed Border Patrol trainees who witnessed the incidents.

5. See *United States v. Otherson,* 637 F.2d 1276 (9th Cir.1980), *cert. denied,* 454 U.S. 840, 102 S.Ct. 149, 70 L.Ed.2d 123 (1981).

6. This court has heretofore affirmed the legality of Otherson's discharge. *Otherson v. Department of Justice,* 228 U.S.App.D.C. 481, 711 F.2d 267 (1983). Otherson seemingly theorizes that if the suspension was unreasonable, he is entitled to backpay and other benefits accruing prior to discharge.

7. See 5 U.S.C. § 7513(a) (1982).

8. U.S. Const. amend. 5.

9. See 5 U.S.C. § 7513(a) (1982).

10. 230 U.S.App.D.C. 188, 715 F.2d 662 (1983).

11. *Id.* at 193, 715 F.2d at 667.

12. *Id.* at 192–193, 715 F.2d at 666–667.

13. If such employee is later acquitted of the crimes charged and reinstated by the agency, we said, he or she will be entitled to backpay. *Id.* at 195, 715 F.2d at 669.

14. *Parsons v. United States Dep't of Air Force,* 228 U.S.App.D.C. 1, 4, 707 F.2d 1406, 1409 (1983), quoting in turn *Douglas v. Veterans Admin.,* 5 M.S.P.B. 313, 328 (1981), and *Citizens to Protect Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136, 153 (1971). See also 5 U.S.C. § 7703(c) (1982); *Gipson v. Veterans Admin.,* 221 U.S.App.D.C. 55, 62, 682 F.2d 1004, 1011 (1982).

■ Otherson challenges the reasonableness of his suspension under the criteria established by MSPB in *Douglas v. Veterans Administration*.[15] He asserts that a less severe penalty—limited duty—should have been imposed in lieu of temporary suspension. Otherson also claims that the suspension violated the principle of like penalties for like offenses because other Border Patrol agents indicted for serious crimes had simply been placed in limited-duty positions.

*Douglas* does refer to the importance of resorting to milder alternative sanctions when available, and to the need for consistency in penalties imposed for wrongful employee conduct.[16] *Douglas* specifies, however, that the alternative should be adequate and effective to deter similar future conduct by the involved employee and others.[17] Douglas also declares that the principle of like penalties for like offenses does not require "mathematical rigidity or perfect consistency regardless of variations in circumstances,"[18] and that mere "'surface consistency should be avoided.'"[19]

In addition to these considerations, *Douglas* lists a number of equally important factors bearing on the appropriateness of a penalty.[20] Included are the employee's job level and type of employment, the visibility of his position, and the degree of contact with the public; the nature and seriousness of the offense, its relationship to the employee's position and responsibilities, and whether it was intentional, maliciously committed or frequently repeated; the notoriety of the crime; and any impact which the criminal episode may have upon the agency's reputation.[21] *Douglas* admonishes agencies to "exercise responsible judgment in each case, based on rather specific, individual considerations, rather than acting automatically on the basis of generalizations unrelated to the individual situation."[22]

We think MSPB's holding that Otherson's temporary suspension was reasonable survives the test of *Douglas*.[23] MSPB justified the disparate treatment INS accorded Otherson in comparison with other Border Patrol employees charged with violent crime[24] by noting the conspiratorial nature of the accusation against Otherson and the fact that his behavior was alleged to be "planned," "brutal," "sustained, repeated, and cooperative."[25] Although the presiding official at Otherson's hearing did find it "administratively practical" for INS to place Otherson in a limited-duty position,[26] that bare conclusion reflects nothing on whether a mere position transfer would suffice to deter him and others from future illegal conduct, and would satisfactorily protect INS's interests in its reputation and in avoidance of future liability[27] were any

15. *Supra* note 14.

16. 5 M.S.P.B. at 332.

17. *Id.*

18. *Id.* at 333.

19. *Id.*, quoting Federal Personnel Manual, ch. 751, subch. 1–2c(1), (2) (Dec. 21, 1976) (emphasis in original).

20. *Id.* at 332.

21. *Id.*

22. *Id.* at 330.

23. MSPB referred explicitly to *Douglas* in the decision under review. *Dick v. Department of Justice, supra* note 2, at 10, App. 121. This court has declared that such a "reference constitutes sufficient indication that the MSPB took into account potentially mitigating considerations in accordance with [the *Douglas*] decision." *Moffer v. Watt,* 223 U.S.App.D.C. 300, 304 n. 14, 690 F.2d 1037, 1041 n. 14 (1982).

24. Two other INS officers, who were indicted for the same incidents as Otherson, were also suspended temporarily by INS. See *Brown v. Department of Justice, supra* note 10, 230 U.S.App.D.C. at 190, 715 F.2d at 664.

25. *Dick v. Department of Justice, supra* note 2, at 15, App. 126; see *Brown v. Department of Justice, supra* note 10, 230 U.S.App.D.C. at 194 n. 3, 715 F.2d at 668 n. 3.

26. *Dick v. Department of Justice,* No. SF075209119 (MSPB Feb. 27, 1980), at 7, App. 108 (initial decision of presiding official).

27. These interests clearly would be implicated if Otherson, even in the course of limited duty, would have any contact with aliens. Although disputed by Otherson, INS maintains that aliens would have been exposed to Otherson in any of the limited-duty positions available. Brief for Respondents at 8. The presiding official did not base his decision to reverse Otherson's suspension on a finding that he would not come into contact with aliens in a limited-duty

Border Patrol agent to engage in further wrongdoing.[28]

In light of the narrowness of our review authority,[29] these considerations lead us to defer to MSPB's determination that an assignment of Otherson to limited duty would not substitute adequately and effectively for temporary suspension. We similarly defer to MSPB's conclusion that, because of the nature and seriousness of the crimes charged, and the absence of any alternative penalty that would have protected the employing agency's interests sufficiently, it was not unreasonable to suspend Otherson without pay pending the outcome of his criminal prosecution. Put another way, we find no "clear error of judgment"[30] in MSPB's decision, and its order is accordingly

*Affirmed.*

JAMES F. GORDON, Senior District Judge, dissenting:

Respectfully, I must dissent for two reasons. First, I think the majority's opinion adopts a looser standard for our review of MSPB decisions than Congress intended. Second, simply viewing the factual record in this case, I believe that petitioner's suspension was "an abuse of the agency's discretion," *Gipson v. Veterans Administration,* 682 F.2d 1004, 1011 (D.C.Cir.1982), and was "unsupported by substantial evidence," 5 U.S.C. § 7703(c)(3) (Supp. V 1981). This case admittedly involves disturbing conduct by a public employee. But this record demonstrates all too dramatically that suspensions like petitioner's may be imposed arbitrarily, and may be based on indictments that can be politically motivated or unreliable. Given how drastically an indefinite

suspension without pay affects an employee's life,—and given that indicted employees are still innocent in the eyes of the law, I think such suspensions should only be sustained in the rarest of cases.

### I. OUR STANDARD OF REVIEW

The majority suggests that the appropriate standard of review for MSPB personnel actions is only whether there has been "a clear error of judgment." I disagree.

Our authority to reverse petitioner's suspension is grounded in 5 U.S.C. § 7703(c), which directs us to review agency disciplinary measures and "hold unlawful and set aside any agency action, findings, or conclusion found to be—(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence."

By focusing on the statutory language authorizing reversal where there has been "an abuse of discretion," courts have repeatedly observed that "[a] reviewing court's function in considering the appropriate sanction for employee misconduct . . . is limited." *Gipson v. Veterans Administration, supra,* 682 F.2d at 1011. Nevertheless, as the MSPB stated in its landmark decision in *Douglas v. Veterans Administration,* 5 MSPB 313, 324–25 (1981), we are also obligated by the statute to ensure that particular sanctions can be supported by "substantial evidence." "[A]n agency's adverse action 'decision' necessarily includes selection of the particular penalty as well as the determination that some sanction was warranted. The statute clearly requires that

---

post; rather, he stated that "[t]he record [did] not persuade [him] that there is any reasonable likelihood that [Otherson] would commit violence against aliens while working as [a] dispatcher[ ], in the garage, on construction work, etc." *Dick v. Department of Justice, supra* note 26, at 8, App. 109.

28. In *Brown v. Department of Justice, supra* note 10, we noted that neither reassignment nor administrative leave appeared to be a practical alternative to temporary suspension of two similarly-situated Border Patrol agents. 230 U.S.App.D.C. at 194 n. 3, 715 F.2d at 668

n. 3. Our dissenting colleague suggests that 5 C.F.R. § 752.404(d)(1) (1983), which prohibits the granting of administrative leave for longer than ten days, may not be "congressionally mandated," and may be unconstitutional as applied in this case. Dissenting Opinion at 1519 & n. 3. Since these questions have not been raised by the parties on this appeal, we do not reach them.

29. See text *supra* at note 14.

30. See text *supra* at note 14.

all facts on which such agency decision rests must be supported by the standard of proof set out therein."

Thus, while it was unclear at the time of *Doe v. Hampton,* 566 F.2d 265, 271 n. 15 (D.C.Cir.1977), that courts should apply the "substantial evidence" test in reviewing adverse personnel actions, that standard was specifically adopted in 1978 in the Civil Service Reform Act. The standard now applies to all three distinct factual inquiries agencies must make in taking adverse actions. *Young v. Hampton,* 568 F.2d 1253, 1264 (7th Cir.1977).

First, agencies must establish that the employee did engage in the alleged misconduct or was indicted for a serious job-related offense. *Brown v. Dep't of Justice,* 715 F.2d 662, 663 (D.C.Cir.1983). Second, agencies must establish a nexus between the efficiency of the service and the misconduct or alleged indictable offenses. This means that agencies must establish that the conduct or alleged offenses (or indictments themselves) may reasonably be expected to interfere with job performance or with the agency's responsibilities. Third, agencies must establish that the particular adverse action proposed will promote the efficiency of the service.

These determinations all may involve factual assessments, which will be subject to the "substantial evidence" test, as well as applications of administrative judgment, which will be subject to the "arbitrary," "capricious," or "abuse of discretion" standards. The determinations must be clearly articulated by the agencies and by reviewing authorities, or courts will be unable to perform their own review function. Determinations reviewable under the "substantial evidence" test must be supported by specific proof and reasoning, and so too "in order to decide whether an agency's action is arbitrary or capricious, 'the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment.' *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971)." *American Optometric Ass'n v. F.T.C.,* 626 F.2d 896, 905 (D.C.Cir.1980).[1]

As to what factors agencies should consider in administering particular sanctions, I would refer agencies to the lengthy list enumerated by the MSPB in *Douglas* and reproduced in the footnotes.[2] Of course,

---

1. I cannot agree with the majority's suggestion, *see* footnote 23 *supra,* that agencies can satisfactorily record their evaluation of the many relevant factors involved in disciplinary actions by a mere reference to the MSPB's decision in *Douglas v. Veterans Administration,* 5 MSPB 313 (1981). *Douglas* was certainly an important decision. But surely a talismanic reference to it will not relieve agencies like the MSPB of all obligation to give these issues explicit consideration, simply because the agencies are shrewd enough to know which case to cite.

2. "Court decisions and OPM and Civil Service Commission issuances have recognized a number of factors that are relevant for consideration in determining the appropriateness of a penalty. Without purporting to be exhaustive, those generally recognized as relevant include the following:
   (1) The nature and seriousness of the offense, and its relation to the e[m]ployee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;
   (2) the employee's job level and type of employment, including supervisory or fiduci-

ary role, contacts with the public, and prominence of the position;
   (3) the employee's past disciplinary record;
   (4) the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;
   (5) the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;
   (6) consistency of the penalty with those imposed upon other employees for the same or similar offenses;
   (7) consistency of the penalty with any applicable agency table of penalties;
   (8) the notoriety of the offense or its impact upon the reputation of the agency;
   (9) the clarity with which the employee was on notice of any rules that were violated in committing the offense, or had been warned about the conduct in question;
   (10) potential for the employee's rehabilitation;
   (11) mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provoca-

not all of these will be pertinent in every case. But to satisfy Congress' desire to give statutory protection against arbitrary adverse actions, agencies must include a conscientious evaluation of these factors. A sufficiently thorough evaluation should preclude unnecessary court appeals as well as allow courts like us to preserve agencies' discretion in managing their workforces.

## II. PETITIONER'S SUSPENSION

Ironically, although the MSPB released its *Douglas* decision calling for careful evaluations while petitioner's appeal was pending before it, in actually deciding this appeal the MSPB fell far short of its *Douglas* directives. The MSPB presiding official who initially heard petitioner's appeal took a full day's testimony, wrote a careful decision, and concluded that petitioner's suspension was "not reasonably necessary" and was "therefore 'not for such cause as will promote the efficiency of the service.'" A.R. (Administrative Record compiled on appeal to the MSPB) at 94, quoting 5 U.S.C. § 7513(a).

The MSPB's entire discussion reversing the official, however, follows:

> Appellants were charged with conspiracy and with the commission of several incidents of planned, brutal behavior towards aliens. The cases of other employees do not contain charges of such sustained, repeated, and cooperative behavior as was allegedly engaged in by these appellants. In view of the nature and seriousness of the charges and the direct relationship between the charges, and appellants' positions and the agency's mission, the Board finds that the indefinite suspensions were reasonably necessary.

A.R. 349.

Aside from its brevity, this analysis is troublesome for several reasons. First, there is the MSPB's conclusion that indefinite suspensions were more deserved here because earlier cases involving other border guards did "not contain charges of such

> tion on the part of others involved in the matter; and
> (12) the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or others."

sustained, repeated, and cooperative behavior." In fact, however, petitioner's presiding official viewed these circumstances in precisely the opposite light. Referring to petitioner's three witnesses (other guards who had not been suspended), the presiding official reasoned:

> All three of these agents were charged with crimes involving firearms; the appellants here are charged with using only their hands and feet, and in one instance, a nightstick, as weapons. Clearly the three Agents who were allowed to perform limited duty were potentially more dangerous to aliens.

> I also note that the appellants here are charged with using calculated brutality, probably in an attempt to maintain authority over aliens through unauthorized means.... The record does not persuade me that there is any reasonable likelihood that they would commit violence against aliens while working as dispatchers, in the garage, on construction work, etc. These jobs are all performed in areas with supervisors or fellow Agents present. In previous cases, just cited, the agency determined that these jobs were sufficiently well supervised so that Agents accused of far more serious crimes could be trusted to perform them.

A.R. 93–94. Thus, the presiding official concluded that petitioner's suspension was less justified than suspensions would have been in other cases. The MSPB never addressed this conclusion, and certainly never advanced the deterrence rationale now put forth by the majority.

Second, nowhere in the record is there evidence that the MSPB and the agency carefully considered alternative sanctions. But the presiding official had, and he had concluded that "it was administratively practical to allow Border Patrol Agents, charged with crimes of violence to perform limited duty without danger to aliens." A.R. 93.

*Douglas v. Veterans Administration*, 5 MSPB at 331–32 (footnotes omitted).

This was no "bare conclusion," as the majority suggests. It came after the official had heard extensive testimony about a full list of alternative jobs that would have kept the petitioner away from aliens and would have protected the agency from public criticism. These jobs included the petitioner's being a dispatcher, a desk officer, an administrative worker in the agency's local headquarters, a radio and key issuer, or a maintenance and construction worker. The MSPB never bothered to discuss the alternative job testimony or the official's conclusion.

Moreover, I continue to believe that even if no alternative positions had been available, the agency should have been obligated to place petitioner on paid leave rather than suspension. The majority in *Brown v. Dep't of Justice*, 715 F.2d 662, 663 (D.C.Cir. 1983), correctly noted that Office of Personnel Management regulations prohibit the use of administrative leave for longer than ten days, 715 F.2d at 668 n. 3, but it is debatable whether those regulations are congressionally mandated. *See* 5 U.S.C. § 6326 (1976) (recognizing "the authority of an Executive agency ... to grant administrative leave excusing an employee from work when it is in the public interest.")[3]

In conclusion, I am persuaded by the majority in *Brown* that agencies must occasionally have authority to discipline employees on the basis of indictments alone. But given the facts of this case, and my belief that indefinite suspensions without pay should seldom be administered, I would reverse the MSPB's order.

---

**3.** *See also Arnett v. Kennedy,* 416 U.S. 134, 193–95, 94 S.Ct. 1633, 1663–64, 40 L.Ed.2d 15 (1974) (White, J., concurring in part and dissenting in part) (recommending suspension with pay in certain employee termination settings).

I also continue to believe that there are due process considerations which require that agencies make administrative leave available, *see Brown,* 715 F.2d at 670 (Gordon, J., dissenting) (contending that a balancing of governmental and employee interests, as dictated by *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1974), cannot justify the

hardships created by indefinite suspensions without pay). Even in the cases where paid leave might be most unattractive,—where, for example, agencies might shrink from paying additional salary to a suspended employee indicted for truly heinous crimes, Congress can always make those benefits recoverable when actual proof of the suspect's guilt is obtained. *Cf.* 42 U.S.C. § 404(a)(1) (1976) (authorizing the recovery of overpayments made to Social Security beneficiaries in cases including those where claimants continue to receive benefits while appealing termination notices).